IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket Nos. 47987 & 48426

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, January 2022 Term |
| | ) | |
| v. | ) | Opinion Filed: May 16, 2022 |
| | ) | |
| CORY RYAN CAMPBELL, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Michael J. Reardon, District Judge.

The decision of the district court is affirmed.

Nevin, Benjamin & McKay, LLP, Boise, for appellant, Cory Ryan Campbell. Debra Groberg argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent, State of Idaho. Kenneth K. Jorgensen argued.

———————————

STEGNER, Justice.

Cory Campbell brings this consolidated appeal. Campbell appeals his sentence arising from his conviction of two counts of battery with attempt to commit rape. Campbell, who was seventeen at the time, was charged with five felony offenses related to multiple victims: four counts of rape and one count of forcible penetration by use of a foreign object. He was charged as an adult pursuant to Idaho Code section 20-509. Campbell ultimately pleaded guilty to amended charges: two counts of battery with attempt to commit rape, both against the same victim. The district court accepted Campbell's pleas, and the State dismissed all remaining counts.

In accordance with the plea agreement, both sides were free to argue at sentencing and nothing was binding on the court. In determining an appropriate sentence, the district court was permitted to consider not only the crimes perpetrated against the victim of the amended charges, but also the crimes alleged by the victims of the dismissed charges and of additional uncharged offenses. All told, Campbell had ten victims. The district court sentenced Campbell to a twenty-year determinate sentence on Count I and to a twenty-year indeterminate sentence on Count II.

1

The district court's written judgment of conviction specifically indicated that the two sentences were to be served consecutively. Campbell timely appealed.

Campbell also filed an Idaho Criminal Rule 35 motion in district court seeking relief under various theories. First, Campbell argued that the written judgment of conviction was inconsistent with the oral pronouncement of sentence in court because the district court did not specify whether the two sentences were to run consecutively or concurrently. Campbell also claimed that he had been erroneously waived into adult court. He further requested a reduction of his sentence. The district court denied Campbell's Rule 35 motion but ordered that a resentencing hearing take place to clarify the apparent ambiguity involving whether the sentences were to be served consecutively or concurrently. At the resentencing hearing, the district court clarified that although the original sentence was ambiguous, the two sentences imposed were intended to be served consecutively. The district court then entered an amended judgment, specifically clarifying that the sentences were to be served consecutively. Campbell timely appealed from the district court's amended judgment and the denial of his Rule 35 motion, and the two appeals were consolidated by order of this Court. For the reasons set forth below, we affirm the district court's decisions.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On May 30, 2019, Campbell was charged in district court with multiple counts of felony rape pursuant to Idaho Code section 20-509. The charges resulted from allegations that Campbell had raped ten underage girls between March, 2018 and March of 2019.[1] On September 12, 2019, the State filed an Information reflecting the same charges as the complaint. Campbell eventually agreed to plead guilty to two counts of battery with intent to commit a serious felony (rape) in exchange for the State dismissing the remaining charges. The State then filed an Amended Information to reflect the plea agreement.

Campbell was sentenced on March 6, 2020. Pursuant to the plea agreement, "all of the victims of the uncharged cases as well as the dismissed cases would be treated as victims in this case," and would be permitted to make victim impact statements at Campbell's sentencing. At sentencing, eleven victim impact statements were presented, either by the victims themselves or

---

[1] The alleged victims were all minors and are therefore referred to only by initials, M.M., J.S., J.J., I.B., M.T., A.A., K.L., K.S., N.W., and N.A. The victims ranged in age from fourteen to seventeen years old and each recounted claims that Campbell had raped them under various circumstances. We use the word "alleged" not to discredit the victims, but because, pursuant to his plea deal, Campbell has not been found guilty beyond a reasonable doubt regarding each victim.

2

by their close family members. The district court orally pronounced Campbell's sentence as follows: "[O]n Count I [the sentence] is 20 years in prison as a determinate sentence with zero years fixed and on Count II [the sentence is] 20 years in prison zero years fixed, all indeterminate." The written judgment of conviction specified that the sentences would run consecutively. Campbell timely appealed, arguing that the district court abused its discretion in sentencing him.

Approximately five months after Campbell's original sentencing, the State moved for an *in camera* review of documents related to an Instagram account, created six days after the sentencing hearing, where an anonymous user posted photos of the protection orders for each victim, along with each victim's name and some of the high schools they attended. The caption to this post stated "All of the bitches who falsely reported Cory campbell [sic]." The State sought *in camera* review by the district court to ensure that the documents related to an investigation of the account were not subject to disclosure pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). Campbell opposed this motion and argued that the documents should be disclosed. The district court conducted an *in camera* review and concluded that the documents were not subject to disclosure under *Brady* because the Instagram account and post were not created until after Campbell had been sentenced. The district court ruled that as such, the documents were not material to either Campbell's guilt or punishment.

After filing his first notice of appeal, Campbell also filed an Idaho Criminal Rule 35 motion with the district court to correct what he claimed was an illegal sentence. Campbell asserted that (1) his sentence was illegal because the district court lacked jurisdiction over Campbell absent a waiver hearing and waiver order from juvenile court (magistrate court) into adult court (district court), and (2) the district court's oral pronouncement of the sentence did not match the written judgment of conviction. The district court denied in part and granted in part Campbell's Rule 35 motion. The district court granted Campbell a new sentencing hearing to correct any ambiguity in his sentence. Campbell objected to the new sentencing hearing and filed an Idaho Criminal Rule 36 motion to correct the written judgment to conform to the oral pronouncement of the sentence. The hearing proceeded, and the district court denied Campbell's Rule 36 motion. The district court concluded that its

> expressed intent, based upon the entire colloquy and the context of the comments made during the oral pronouncement, was a determinate prison term of 20 years on Count I and on Count II an indeterminate prison term of 20 years. That is, zero

years fixed on Count II followed by 20 years indeterminate to run consecutively to Count I.

The district court entered an amended judgment to reflect the clarification. Campbell timely filed a second notice of appeal challenging the district court's denial of his Rule 35 motion and the district court's *in camera* review of the potential *Brady* evidence. The two appeals were consolidated by this Court.

## II.    STANDARD OF REVIEW

> "Constitutional questions are reviewed *de novo*." *State v. Kelley*, 161 Idaho 686, 689, 390 P.3d 412, 415 (2017) (italics in original). "For constitutional challenges, 'every presumption is in favor of the constitutionality of the statute, and the burden of establishing the unconstitutionality of a statutory provision rests upon the challenger.'" *Zeyen v. Pocatello/Chubbuck Sch. Dist. No. 25*, 165 Idaho 690, 694, 451 P.3d 25, 29 (2019) (quoting *Osmunson v. State*, 135 Idaho 292, 294, 17 P.3d 236, 238 (2000)).

*State v. Orozco*, 168 Idaho 274, 277, 483 P.3d 331, 334 (2021).

> Idaho Criminal Rule 35(a) "is a narrow rule which allows a trial court to correct an illegal sentence or to correct a sentence imposed in an illegal manner" at any time. *State v. Draper*, 151 Idaho 576, 601, 261 P.3d 853, 878 (2011). "Generally, whether a sentence is illegal or whether it was imposed in an illegal manner is a question of law, over which we exercise free review." *Id.*

*State v. Shanahan*, 165 Idaho 343, 347, 445 P.3d 152, 156 (2019).

"Sentencing decisions are [] reviewed using an abuse of discretion standard." *State v. Jones*, 167 Idaho 353, 358, 470 P.3d 1162, 1167 (2020) (quoting *State v. Matthews*, 164 Idaho 605, 607, 434 P.3d 209, 211 (2019)).

> When this Court reviews an alleged abuse of discretion by a trial court the sequence of inquiry requires consideration of *four* essentials. Whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.

*Id.* (italics in original) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

## III.    ANALYSIS

**A. The district court's oral pronouncement of Campbell's sentence was ambiguous; however, the district court properly cured the ambiguity by resentencing Campbell and entering an amended judgment of conviction.**

4

At the sentencing hearing on March 6, 2020, the district court orally imposed Campbell's sentence:

> I am going to find that in this case considering all those factors that have been discussed that the minimum sentence that will accomplish those objectives on Count I is 20 years in prison as a determinate sentence with zero years fixed and on Count II 20 years in prison zero years fixed, all indeterminate.

On March 10, 2020, the district court entered a Judgment of Conviction and Order of Commitment, which read in relevant part:

> [T]he Defendant is sentenced pursuant to Idaho Code § 19-2513 to the custody of the Idaho State Board of Correction, to be held and incarcerated by said Board in a suitable place for a period of time as follows:
>
> **COUNT I:** For a minimum fixed and determinate period of confinement of twenty (20) years, with the fixed minimum period followed by an indeterminate period of custody of up to zero (0) years, for a total term not to exceed twenty (20) years.
>
> **COUNT II:** For a minimum fixed and determinate period of confinement for zero (0) years, with the fixed minimum period followed by an indeterminate period of custody of up to twenty (20) years, for a total term not to exceed twenty (20) years, to run consecutively to Count I.

(Emphasis in original.)

On July 8, 2020, Campbell filed a "motion for relief pursuant to Idaho Criminal Rule 35," arguing in part that his sentence had been illegally imposed because the written judgment did not match the sentence orally pronounced by the district court at the sentencing hearing. The district court denied Campbell's Rule 35 motion but "acknowledge[d] that there is an ambiguity that needs to be addressed." "To that end, the [c]ourt [] set a new sentencing hearing for the limited purpose of entering a new oral pronouncement of the sentence clearing away any ambiguity in [Campbell]'s sentence."

Campbell then brought a motion "pursuant to I.C.R. 35(b) and 36," objecting to the new sentencing hearing, as well as an additional "motion for relief pursuant to Idaho Criminal Rule 36." Both motions were supported by the same contemporaneously filed memorandum, in which Campbell asserted that "the record [wa]s not ambiguous" and "it is the oral pronouncement of the sentence which controls." Campbell requested that the district court, rather than hold a new sentencing hearing, "amend the written judgment to conform to the oral pronouncement at sentencing."

On October 2, 2020, over Campbell's objection, the district court held another sentencing hearing. The district court denied the Rule 36 motion, noting "that Rule 36, that can't be used to conform a written judgment to an oral pronouncement. It can correct clerical mistakes but not errors of the [c]ourt." The district court also found that, "having reviewed the oral record of the case on the record," "there [wa]s an ambiguity in the original sentencing that need[ed] to be addressed[:]"

> The ambiguity that I see that is in the sentencing is contained in that portion of the oral pronouncement noted by defendant in his various motions in which the [c]ourt states that [it imposed a sentence] on Count I [of] 20 years in prison as a determinate sentence with zero years fixed, and on Count II, 20 years in prison, zero years fixed, all indeterminate.

> Now, the defendant has claimed . . . that the statement is not ambiguous. In order to arrive at that conclusion, it seems to me the defendant focuses only on that portion which states "zero years fixed." It might even be further reduced to the focus on one word; that is, the word "fixed." And it ignores the preceding portion of the sentence which provides for 20 years in prison as a determinate sentence.

>  . . .

> It just seems to me that that – those two things can't concurrently coexist. And all of the cases, it seems to me that have been provided – *Allen* and *Hoffman*, and I have reviewed *Bosier* and *State versus Wallace*, as well as *State versus Phillips*, – talk in terms of what the [c]ourt's expressed intent was at the time of sentencing.

> . . .

> I am finding that my expressed intent, based upon the entire colloquy and context of the comments made during the oral pronouncement, was a determinate prison term of 20 years on Count I and on Count II an indeterminate prison term of 20 years. That is, zero years fixed on Count II followed by 20 years indeterminate to run consecutively to Count I.

The district court then entered an amended judgment to that effect.

On appeal, Campbell argues that "[w]hen there is a disparity between the sentence imposed in open court and that expressed in the written judgment of conviction," "the oral pronouncement controls." *See State v. Wallace*, 116 Idaho 930, 932, 782 P.2d 53, 55 (Ct. App. 1989); *State v. Timbana*, 145 Idaho 779, 782, 186 P.3d 635, 638 (2008); *State v. McCool*, 139 Idaho 804, 806 n.1, 87 P.3d 291, 293 n.1 (2004). Campbell asserts that both the Judgment and Amended Judgment altered the oral pronouncement of the sentence because the oral pronouncement did not specify whether the sentences imposed for Counts I and II were to run concurrently or consecutively. "'[I]f a court does not specify whether a sentence is to be served concurrently with or consecutive to

another sentence,'" Campbell argues, "'the sentence will be concurrent because, in the absence of a specification that it is to be consecutive, the defendant's service of the sentence will begin immediately.'" *See State v. Bosier*, 149 Idaho 664, 667, 239 P.3d 462, 465 (Ct. App. 2010); *State v. Allen*, 144 Idaho 875, 877, 172 P.3d 1150, 1152 (Ct. App. 2007). Campbell contends that the district court erred in three specific ways: 1) entering a written judgment that did not conform to the oral pronouncement; 2) holding a "resentencing" hearing to make the oral pronouncement comply with the written judgment; and 3) entering the amended judgment. Because of these underlying legal errors, Campbell argues that the district court erred when it did not grant his Rule 36 motion to correct the sentence.

The State argues in response that "the district court correctly concluded the oral pronouncement of [the] sentence was ambiguous, and granting a new sentencing hearing to pronounce clarified sentences was appropriate." The State posits that "[t]he only way [the] sentences make sense is in the aggregate." Additionally, "resentencing is a proper remedy when 'dealing with ambiguous oral pronouncements' of sentence." *See Wallace*, 116 Idaho at 932, 782 P.2d at 55; *see also State v. Phillips*, 99 Idaho 354, 355, 581 P.2d 1173, 1174 (1978)). The State counters Campbell's reliance on *Bosier* and *Allen* by arguing that both cases are distinguishable here because the district courts in those cases "declare[d] an after-the-fact intent not suggested in [the] oral pronouncement."

In reply, Campbell contends that "[t]he orally pronounced sentence is not ambiguous," and, as such, the district "court had no authority to modify its sentence to make the counts consecutive[.]"

1. The oral pronouncement of the sentence was ambiguous.

We must first determine whether the orally pronounced sentence was ambiguous. If it was ambiguous, Rule 36 is not the correct avenue under which to challenge the original written judgment. Idaho Criminal Rule 36 provides that, "[a]fter giving any notice it considers appropriate, the court may at any time correct a *clerical error* in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." I.C.R. 36 (italics added). A "clerical error" is defined as "[a]n error resulting from a minor mistake or inadvertence and not from judicial reasoning or determination; esp[ecially] a drafter's or typist's technical error that can be rectified without serious doubt about the correct reading." *Clerical Error*, BLACK'S LAW DICTIONARY (11th ed. 2019).

7

"If an order of commitment does not accurately represent the court's oral sentence pronouncement that constitutes the judgment, it is manifestly proper to correct the error under Rule 36 so the written expression is consistent with that judgment." *Wallace*, 116 Idaho at 932, 782 P.2d at 55. In *Wallace*, the district court orally pronounced a fourteen-year determinate sentence, but the written judgment omitted the word "determinate." *Id*. The Idaho Court of Appeals concluded that the "orally pronounced sentence was neither ambiguous nor legally defective," and, pursuant to Rule 36, the district court properly corrected the written judgment to reflect a "determinate" sentence because the omission was a clerical error. *Id.*

However, "Rule 36 does not provide a vehicle by which a trial court may amend a sentence to give effect to the court's previously unstated intent that alters the sentence." *Allen*, 144 Idaho at 878, 172 P.3d at 1153. In *Allen*, the Court of Appeals concluded that Idaho Criminal Rule 36 was not the appropriate mechanism by which to amend a written judgment to conform to the orally pronounced sentence. *Id.* The district court entered an amended judgment, citing Rule 36 as authority, which substantively altered the description of the sentence by effectively removing Allen's credit for time served, which was provided for in the oral pronouncement of the sentence. *Id.* The Court of Appeals held that "the district court had no authority to enter the amended judgment that substantively altered Allen's sentence, and it is of no effect." *Id.*

We conclude that the district court's oral sentence was ambiguous given the context in which the district court handed down Campbell's sentence. The district court orally pronounced a sentence of "20 years in prison as a determinate sentence with zero years fixed" on Count I. On Count II, the district court imposed "20 years in prison zero years fixed, all indeterminate." "Determinate" and "fixed" are synonymous; "indeterminate" and "fixed" are not. *See State v. Windom*, 150 Idaho 873, 877–78, 253 P.3d 310, 314–15 (2011). One sentence cannot logically be both twenty years fixed and zero years fixed at the same time. As noted by the district court at the resentencing hearing, "those two things can't concurrently coexist." A fixed or determinate sentence is one that must be served by the defendant before he will be eligible for parole. An indeterminate sentence is one during which the defendant could be on parole, if the defendant has been granted parole. Consequently, it would make no sense to impose a sentence that was twenty years fixed and twenty years indeterminate to be served *concurrently* because the indeterminate sentence would have no effect—the indeterminate portion would already have been served at the

8

conclusion of the determinate sentence. Thus, the district court was correct in determining that the oral pronouncement of the sentence was ambiguous.

    2.  <u>The ambiguity in the oral pronouncement was cured at the resentencing hearing.</u>

We next conclude that the district court cured the ambiguity in the original oral pronouncement of the sentence by holding a "resentencing" hearing. "Although a written judgment is presumably a correct statement of the judgment pronounced in open court," if there is dispute between the orally pronounced sentence and the written sentence, the oral sentence will be followed as long as it is unambiguous. *Wallace*, 116 Idaho at 932, 782 P.2d at 55.

When the oral pronouncement of a sentence is determined to be ambiguous on appeal, the correct remedy is to remand the case for correction by the district court. *State v. Hoffman*, 108 Idaho 720, 723, 701 P.2d 668, 671 (Ct. App. 1985); *see also State v. Watts*, 131 Idaho 782, 786, 963 P.2d 1219, 1223 (Ct. App. 1998) ("Because the amended judgment is incorrect in its expression of the sentence, this case must be remanded to the district court for correction of the amended judgment of conviction with respect to the sentence for Count III.").

The district court set forth Campbell's sentences, the context of which indicated they were to run consecutively. While the district court's sentence is an uncommon one, the only reasonable interpretation of the sentence was that it was to run consecutively. It would make no practical sense to impose a 20-year fixed term for Count I to run concurrently with a zero-year fixed term for twenty years on Count II. Instead, the only reasonable interpretation is that Campbell would serve 20 years fixed on Count I followed by 20 years indeterminate on Count II. He would be eligible for parole after 20 years in the penitentiary, because the fixed term would be followed by a 20 year indeterminate sentence.

Campbell was afforded all the process he was due. Remanding the case at this juncture for the district court to do what it has already done would be futile and is therefore unnecessary. *See Allen*, 144 Idaho at 878, 172 P.3d at 1153. The district court did not add "previously unstated intent" to the record at the resentencing hearing. Rather, the district court clarified an ambiguity from its previous oral pronouncement. It did not attempt to change its reasoning or the substance of Campbell's sentence after the fact. Because the sentence imposed was ambiguous, the district court did not err by holding a resentencing hearing to clarify its original intent and to enter an amended judgment.

**B. The district court did not err in denying Campbell's Rule 35 motion to correct an illegal sentence.**

Campbell next challenges the district court's denial of his motion to correct an illegal sentence, brought pursuant to Idaho Criminal Rule 35(a). On July 8, 2020, Campbell filed a "motion for relief pursuant to Idaho Criminal Rule 35," arguing in part that his sentence was illegal because the automatic waiver set forth in Idaho Code section 20-509 violated his right to due process.[2] The district court denied the motion, relying upon *State v. Burnight*, 132 Idaho 654, 978 P.2d 214 (1999), because "the propriety of the waiver, whether it be voluntary or automatic, must be both properly and timely challenged." Additionally, the district court noted that Campbell "acknowledge[d] that the Idaho Court of Appeals 'has long held that the automatic waiver provision does not violate the due process clause of the Fourteenth Amendment.'" *See State v. Jensen*, 161 Idaho 243, 248, 385 P.3d 5, 10 (Ct. App. 2016)). Though this Court had not yet heard oral argument in *State v. Orozco*, 168 Idaho 274, 483 P.3d 331 (2021), which later upheld the constitutionality of the automatic waiver statute, the district court concluded it could "not base its decision on the potential for controlling authority to be overturned."

On appeal, Campbell argues that the automatic waiver provision in Idaho Code section 20-509 is unconstitutional and, as such, the district court did not have subject matter jurisdiction to sentence him. First, Campbell asserts that, because the district court did not have jurisdiction to sentence him, the illegality of his sentence is "clear from the 'face of the record[.]'" *See* I.C.R. 35(a). Campbell next argues that issues relating to "subject matter jurisdiction may be raised at any time" "and may not be waived by the parties." Campbell points to this Court's decision in *Burnight*, 132 Idaho at 654, 978 P.2d at 214, and argues that *Burnight* is distinguishable from the case at bar because "the juvenile in *Burnight* did not challenge the constitutionality of the automatic waiver statute," instead he "challenged whether the waiver rule applied to one charge in his case."

Campbell next asserts that the automatic waiver provision is unconstitutional because it violates due process. Campbell's main argument is that "a juvenile has a liberty interest in the individualized treatment available in juvenile court." Campbell concedes that the due process "issue was recently resolved against [him] in *State v.* [] *Orozco*." However, Campbell still presents

---

[2] If a juvenile commits the crime of rape, Idaho Code section 20-509 automatically waives the juvenile into adult court. I.C. § 20-509(1)(c).

this argument because "[i]t is believed that Mr. Orozco will seek review in the United States Supreme Court," and thus "*Orozco* is not yet final[.]"[3]

The State counters that the district court lacked jurisdiction to hear Campbell's due process argument because "Campbell's assertion that due process entitled him to a waiver hearing is not a cognizable claim under Rule 35." The State further asserts that, because "juvenile jurisdiction is personal jurisdiction 'subject to waiver'" and Campbell waived his argument by pleading guilty in adult court, the district court properly denied the Rule 35 motion. Additionally, the State argues that the automatic waiver provision does not violate due process. The State thus contends that Campbell has failed to provide any reason why this Court should overrule *Orozco*.

We first conclude that a Rule 35(a) motion to correct an illegal sentence is not the correct mechanism to challenge the constitutionality of a criminal sentence. Idaho Criminal Rule 35(a) provides that "[t]he court may correct a sentence that is illegal from the face of the record at any time." I.C.R. 35(a). An "illegal sentence" as contemplated by Rule 35(a) means a sentence that is not statutorily authorized. *State v. Robbins*, 123 Idaho 527, 529, 850 P.2d 176, 178 (1993). For example, a sentence that is "clearly in excess of that provided by" a statute is illegal. *State v. Lavy*, 121 Idaho 842, 845, 828 P.2d 871, 874 (1992). However, even if a sentence violates due process, it is not "illegal" under Rule 35(a). *Robbins*, 123 Idaho at 529, 850 P.2d at 178 ("Even if [the defendant's] sentence violated his right to due process of law as he asserts, it was not illegal in the sense the term is used in I.C.R. 35[.]").

We further conclude that Campbell waived any jurisdictional challenge to the automatic waiver provision by pleading guilty. In *Burnight*, this Court stated that "[w]aiver of juvenile jurisdiction . . . is a unique jurisdictional question." 132 Idaho at 658, 978 P.2d at 218. "The legislature, by determining that automatic waiver is allowed for various crimes, has designated juvenile jurisdiction as a type of jurisdiction subject to waiver." *Id.* "Thus, the jurisdictional bar may be overcome if not properly and timely challenged." The Court further noted that "no public policy is offended by allowing *personal* jurisdiction over a juvenile to be estopped or lost by waiver." *Id.* (italics added). Because we have held that the automatic waiver provision relates to personal jurisdiction, Campbell waived any jurisdictional challenge when he pleaded guilty.

---

[3] In his reply brief, Campbell informed the Court that the appellant in *Orozco* "has decided not to seek review by the United States Supreme Court."

11

Even if we were to consider the merits of Campbell's due process argument, his argument is unpersuasive under this Court's recent decision in *Orozco*.

> "'To determine whether an individual's due process rights under the Fourteenth Amendment have been violated, courts must engage in a two-step analysis. The Court must first decide whether the individual's threatened interest is a liberty or property interest under the Fourteenth Amendment.' In the second step, the Court 'determines what process is due.'" *Guzman v. Piercy*, 155 Idaho 928, 939, 318 P.3d 918, 929 (2014) (quoting *Bradbury v. Idaho Judicial Council*, 136 Idaho 63, 72–73, 28 P.3d 1006, 1015–16 (2001)); *see also Mathews v. Eldridge*, 424 U.S. 319, 333–35 (1976).

*Orozco*, 168 Idaho at 277–78, 483 P.3d at 334–35. The *Orozco* Court explicitly held that defendants who commit a crime enumerated in Idaho Code section 20-509 do not have "a liberty interest in the individualized treatment offered in juvenile court." *Id.* at 281, 483 P.3d at 338. Likewise, the Court held that there is not "an all-encompassing and protectable liberty interest in one's status as a juvenile" *Id.* at 282, 483 P.3d at 339. Notably, Campbell does not argue that *Orozco* was incorrectly decided or that it should be overruled; rather, he simply puts forth the arguments because, at the time the opening brief was filed, he believed the appellant in *Orozco* would appeal to the United States Supreme Court. Campbell has failed to establish the automatic waiver provision violated his due process rights. Therefore, we conclude that the district court did not err in denying Campbell's Rule 35(a) motion to correct an illegal sentence.

**C. The district court did not abuse its discretion in imposing Campbell's sentence.**

Campbell next argues that the district court "failed to consider Cory as a juvenile and therefore did not act consistently with the legal standards applicable to the specific choices before it." Campbell asserts that the district court did not consider the results of both his psychiatric and psychosexual evaluations, which considered him a good candidate for rehabilitation. Campbell points to the United State Supreme Court case law regarding youth as a mitigating factor, ultimately asking this Court to vacate his sentence.

In response, the State argues that the district court properly considered Campbell's youth, and that his youth was "tempered" by the pattern of conduct that consisted of forcibly raping ten girls over the course of one year. The State asserts that the district court clearly considered Campbell's youth as demonstrated by its statements at sentencing.

In further reply, Campbell asserts that his "current sentence is unnecessarily long and will subject Cory to increased risk of violence and significantly delay his treatment, increasing his risk of recidivism." "The [district] court's failure to balance or calculate any more [than the underlying

12

conduct]," Campbell contends, "was an abuse of discretion that resulted in an unreasonable sentence of a juvenile."

> "[A] fundamental requirement in the proper exercise of sentencing discretion is reasonableness." A sentence is reasonable if it appears necessary to achieve the objectives of criminal punishment. "The objectives of criminal punishment are protection of society, deterrence of the individual and the public, possibility of rehabilitation, and punishment or retribution for wrongdoing, with the primary objective being the protection of society."
>
> . . .
>
> "A sentence is excessive if it is unreasonable under any rational view of the facts." "When a sentence is challenged as being excessively harsh, we independently review the record on appeal, having due regard for the nature of the offense, the character of the offender, and the protection of the public interest." "When considering whether the district court abused its sentencing discretion, we review the entire sentence[.]"

*State v. McGrath*, 169 Idaho 656, 501 P.3d 346, 358 (2021) (quoting *State v. Dobbs*, 166 Idaho 202, 204–06, 457 P.3d 854, 856–58 (2020)) (internal citations omitted) (alterations in original). When a sentence is legal, the defendant bears the burden of demonstrating unreasonableness. *State v. Matthews*, 164 Idaho 605, 608, 434 P.3d 209, 212 (2019). "In deference to the trial judge, this Court will not substitute its view of a reasonable sentence where reasonable minds might differ." *Id.* (quoting *State v. Stevens*, 146 Idaho 139, 148–49, 191 P.3d 217, 226–27 (2008)).

Idaho Code section 18-912 permits a sentence of up to twenty years for battery with intent to commit a serious felony. Therefore, Campbell's sentence was legal because it was explicitly authorized by statute. *Matthews*, 164 Idaho at 608, 434 P.3d at 212. As such, it is Campbell's burden to demonstrate unreasonableness. Campbell has not met this burden.

At sentencing, the district court heard extraordinarily emotional testimony from multiple victims and their family members. Campbell also made an allocution to the district court. In sentencing Campbell, the district court first acknowledged Idaho's sentencing policy and the objectives of sentencing set forth in *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct. App. 1982), and Idaho Code section 19-2521. The district court noted that all those factors informed its sentencing decision. Next, the district court specifically discussed the primary consideration in sentencing – the protection of society:

> As I reviewed the presentence investigation and the psychosexual evaluation and the sentencing memorandum, I found the pattern of behavior was particularly disturbing to me because it appeared to me to be both predatory and serial. It

13

demonstrates in my view the ability to plan an offense and then the willingness to exploit the vulnerabilities of your victims in order to execute the offense.

Also disturbing is what appears to me is your demonstrated capacity to recognize that you should regret your actions and as well as the need to express regret to your victims, but the inability for you to translate that regret into stopping and to not committing new offenses continuing to victimize others.

The pattern, it seems to me, tempers really any consideration of your culpability based upon your youth and based – because it's callous—unnecessarily callous.

The district court next stated "I've considered your, as the case law describes it, transient immaturity of youth." The district court discussed the relevant United States Supreme Court case law regarding the mitigating factor of youth, concluding that none of those cases had any "real application here" because Campbell was neither being sentenced to death nor life without the possibility of parole.

The district court did not abuse its discretion in sentencing Campbell to the maximum penalty allowed on Count I and an additional indeterminate term of twenty years on Count II. The district court recognized that Campbell's sentence was within its discretion. Furthermore, the district court acted within the boundaries of that discretion by imposing a sentence authorized by statute. Third, the district court acted consistently with the applicable legal principles because it considered the goals of sentencing and Campbell's youth in concluding that incarceration would further the protection of society. Finally, the district court reached its decision by an exercise of reason by considering the nature of the offenses and the information contained in the PSI in determining an appropriate sentence. Accordingly, Campbell has not demonstrated that his sentence constituted an abuse of discretion.

### D. The district court did not abuse its discretion in denying Campbell's Rule 35(b) motion for leniency.

As part of his Rule 35 motion, Campbell also sought a reduction of his sentence based on "additional information" showing that he was at greater risk of violence in an adult prison and that any potential rehabilitative treatment would be delayed. The district court denied this motion, stating that it could not

find that Defendant's original sentence was unduly harsh or excessive, and Defendant has not presented any new evidence or authority for the Court to consider. Defendant's age was a primary consideration during the sentencing hearing, and nothing Defendant has submitted tends to show that his original sentence was unduly harsh or excessive.

On appeal, Campbell argues that new information and evidence supported granting the Rule 35 motion for leniency. The "new information" Campbell presented consisted of evidence that

> (1) long terms of incarceration in adult prisons subject juveniles to increased risk of violence and increase their risk of recidivism; (2) that under the current sentence Cory's sexual offender treatment will be significantly delayed making it less effective[;] and (3) that juvenile sexual offender treatment would be the most effective form of treatment and it will not be offered at an adult prison."

Campbell contends that the district court failed to recognize this new information, and as such, it "could not have exercised discretion or reasoning in considering it."

In response, the State argues that the district court did consider the "new information" presented by Campbell when it noted that Campbell's age was a primary factor at sentencing. The State further contends that the information was not new because it related to his youth, which was considered at sentencing.

Idaho Criminal Rule 35(b) provides:

> Within 120 days of the entry of the judgment imposing sentence or order releasing retained jurisdiction, a motion may be filed to correct a sentence that has been imposed in an illegal manner or to reduce a sentence and the court may correct or reduce the sentence. The court may also reduce a sentence on revocation of probation or on motion made within 14 days after the filing of the order revoking probation. Motions are considered and determined by the court without additional testimony and without oral argument, unless otherwise ordered. A defendant may only file one motion seeking a reduction of sentence.

I.C.R. 35(b). "A motion to reduce a sentence pursuant to I.C.R. 35 is essentially a plea for leniency, and a decision thereon is vested in the sound discretion of the sentencing court." *Lavy*, 121 Idaho at 845, 828 P.2d at 874. This Court's "responsibility on appeal" is "to determine whether the trial court abused its discretion in failing to grant the leniency requested[.]" *Id.* "[I]n reviewing denial of a Rule 35 motion, the Court not only examines the original sentencing, but examines any additional information subsequently presented to the district court in support of the motion." *Burnight*, 132 Idaho at 660, 978 P.2d at 220.

The district court did not abuse its discretion in denying the Rule 35(b) motion for leniency. In Campbell's original Rule 35 motion, he stated that "additional information" showed that he was at a greater risk of violence in adult prison and that rehabilitation efforts would be thwarted by the current sentence, citing a wide range of both legal and scientific articles regarding juvenile offenders published between 1994 and 2017. In denying Campbell's motion, the district court

15

effectively concluded that this information was not new because it had already considered Campbell's age at sentencing.

The information presented by Campbell was not "new" in that it did not pertain specifically to his case or culpability. *See e.g.*, *State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007). In *Huffman*, this Court considered a motion for leniency where the "new" information presented by the defendant consisted of "statements made by the parole board when revoking his parole" on a prior sentence. *Id.* Such information specifically related to the defendant himself and his criminal punishments. *Id.* Here, Campbell merely presented research regarding juvenile offenders that existed long before Campbell's criminal conduct occurred. As we concluded above, the district court fully considered Campbell's youth and its potential mitigation at sentencing; consequently, additional information regarding Campbell's juvenile status was not new information for purposes of Rule 35(b). As such, we conclude that the district court did not abuse its discretion in denying Campbell's Rule 35(b) motion.

### E. The district court did not err in rejecting the newly discovered evidence as *Brady* material.

On March 12, 2020, six days *after* the sentencing hearing, an anonymous user created a public Instagram account with the username "fuvkcory." The anonymous user posted photos of the no contact order prohibiting Campbell from contacting the victims. The post's caption stated, "All of the bitches who falsely reported Cory campbell [sic]" and identified all ten victims by name and some of the high schools they attended.

Because the State was concerned that the post might be subject to disclosure under *Brady v. Maryland*, 373 U.S. 83 (1963), it moved for an *in camera* review of the evidence on August 11, 2020.[4] The district court granted the motion on August 13, 2020, and entered an order for *in camera* review of the evidence. On December 14, 2020, the district court entered an order finding the new evidence was not subject to disclosure to Campbell under *Brady*. The district court reasoned that, because "[t]he reports and documents in question were created due to actions that occurred subsequent to [Campbell's] guilty plea and sentencing," "the evidence in question fails to meet the materiality requirements for disclosure under a *Brady* analysis." The district court

---

[4] *Brady* obligates a prosecutor to disclose information to a defendant that is exculpatory or impeaching and material to a defendant's guilt or punishment. 373 U.S. at 87.

16

stated it could not "find that the evidence is material to either [Campbell's] guilt or punishment or that any part of the proceedings would have been different."

On appeal, Campbell essentially argues that the district court applied the incorrect standard in reviewing the purported *Brady* evidence. Campbell asserts that, "[f]or the defendant to be entitled to receive *Brady* evidence, the evidence need *only* be exculpatory or impeaching" because "the question of materiality is a standard of review applied when determining whether a conviction should be vacated due to the [S]tate's failure to turn over *Brady* material." *See United States v. Olsen*, 704 F.3d 1172, 1183 n.3 (9th Cir. 2013) (italics added). Campbell urges that "there is no requirement that the evidence be material for the disclosure requirement to be triggered" under either *Brady* or Idaho Rule of Professional Conduct 3.8(d). Campbell notes that this Court reviews *de novo* questions of constitutionality under *Brady* and requests this Court to independently review the sealed evidence.

The State counters that, "'[o]n a *Brady* challenge to a guilty plea, the test for materiality . . . is whether there is a reasonable probability that, but for the [S]tate's failure to produce the information, the defendant would not have entered the plea but instead would have insisted on going to trial.'" *Hall v. State*, 156 Idaho 125, 130, 320 P.3d 1284, 1289 (Ct. App. 2014). The State asserts that the "investigation of an event that occurred after the conviction and sentencing of Campbell meets none of [the three *Brady*] elements[.]"

1. The district court applied the correct *Brady* standard.

At the outset, we conclude that the district court applied the correct standard when reviewing the potential *Brady* evidence because, contrary to Campbell's assertion, there is a materiality requirement: "The prosecution has a duty to disclose evidence that is *both* favorable to the defense and *material* to either guilt or punishment." *State v. Hall*, 163 Idaho 744, 830, 419 P.3d 1042, 1129 (2018) (italics added) (citing *Brady*, 373 U.S. at 87). "'There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice[5] must have ensued.'" *Id.* (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)).

---

[5] "Prejudice" and "materiality" are used interchangeably in the context of *Brady*. *See Strickler v. Greene*, 527 U.S. 263, 280–82 (1999).

When defense counsel makes a specific request for discovery, "*if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists*, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge." *United States v. Agurs*, 427 U.S. 97, 106 (1976) (italics added). "The problem," explained the Supreme Court, "arises in two principal contexts." *Id.* at 107.

> First, in advance of trial, and perhaps during the course of a trial as well, the prosecutor must decide what, if anything, he should voluntarily submit to defense counsel. Second, after trial a judge may be required to decide whether a nondisclosure deprived the defendant of his right to due process. Logically *the same standard must apply at both times*. For unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose.

*Id.* at 107–08 (italics added). The Court further noted that "there is a significant practical difference between the pretrial decision of the prosecutor and the post-trial decision of the judge." *Id.* at 108. "Because [materiality is] an inevitably imprecise standard, and because the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the prudent prosecutor will resolve doubtful questions in favor of disclosure." *Id.* However, "the prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial." *Id.*

Campbell points to *United States v. Olsen*, in which the United States Court of Appeals for the Ninth Circuit stated in a footnote, "[a] trial prosecutor's speculative prediction about the likely materiality of favorable evidence, however, should not limit the disclosure of such evidence, because it is just too difficult to analyze before trial whether particular evidence ultimately will prove to be 'material' after trial." 704 F.3d at 1183 n.3. This is similar to Idaho Rule of Professional Conduct 3.8(d), also relied upon by Campbell, which likewise does not require that evidence be material prior to mandatory disclosure:

> [t]he prosecutor in a criminal case shall . . . make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal[.]

I.R.P.C. 3.8(d).

Campbell's reliance on the Ninth Circuit's footnote is misplaced, as is his reliance on the Rules of Professional Conduct. As the Supreme Court has explained, "[t]he *Brady* rule is based on the requirement of due process." *United States v. Bagley*, 473 U.S. 667, 675 (1985). "Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur." *Id.* (footnote omitted). "Thus, the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial[.]" *Id.* (footnote omitted). "An interpretation of *Brady* to create a broad, constitutionally required right of discovery 'would entirely alter the character and balance of our present systems of criminal justice.'" *Id.* at 675 n.7 (quoting *Giles v. Maryland*, 386 U.S. 66, 117, (1967) (Harlan, J., dissenting)). "Furthermore, a rule that the prosecutor commits error by any failure to disclose evidence favorable to the accused, no matter how insignificant, would impose an impossible burden on the prosecutor[.]" *Id.* The United States Supreme Court has been clear: a prosecutor need only disclose favorable evidence that is *also* material. *Id.*

Additionally, Campbell provides no authority to support his contention that he may challenge the nondisclosure of favorable evidence under the Rules of Professional Conduct, nor is it likely that he could have: "Violation of a Rule [of Professional Conduct] should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached." I.R.P.C. Scope, para. 20. "The fact that a Rule is a just basis . . . for sanctioning a lawyer under the administration of a disciplinary authority[] does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule." *Id.* The district court applied the correct *Brady* standard.

2. The district court did not err in concluding the undisclosed evidence was not required to be disclosed under *Brady*.

We next address the substance of the undisclosed evidence and conclude that the district court did not err in ruling that the undisclosed evidence was not required to be disclosed under *Brady*. The district court concluded the undisclosed evidence "fail[ed] to meet the materiality requirements for disclosure under a *Brady* analysis."

"When assessing the materiality, 'the question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the [outcome].'" *Thumm v. State*, 165 Idaho 405, 423–24, 447 P.3d 853, 871–72 (2019) (quoting

*Strickler*, 527 U.S. at 290). "Such evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler*, 527 U.S. at 280.

We conclude that the undisclosed evidence is not material to Campbell's guilt or punishment. The "outcome" for purposes of this *Brady* analysis is the sentence Campbell received. Therefore, the relevant question is whether there is a reasonable probability that Campbell's sentence would have been different considering the evidence. We conclude there is not. The Instagram account was neither created nor used to identify the alleged victims until *after* Campbell pleaded guilty and received his sentence. In this case, Campbell's criminal conduct occurred in 2019, he was sentenced on March 6, 2020, and the Instagram account was created and identified the victims on March 12, 2020. The account's creation and content was immaterial to the outcome of an event which occurred on March 6. Consequently, the district court did not err in concluding that the undisclosed evidence did not result in prejudice to Campbell.

Because we agree with the district court that the undisclosed evidence was immaterial to Campbell's guilt or punishment, we need not reach the remaining two *Brady* factors. *See Thumm*, 165 Idaho at 424, 447 P.3d at 872. As a result, the district court did not err in concluding that the evidence was not subject to disclosure under *Brady*.

### F. The district court did not violate Campbell's Eighth Amendment rights because it properly considered Campbell's youth as a mitigating factor during sentencing.

After filing his opening brief, Campbell filed a supplemental brief contending that the district court violated the Eighth Amendment by not considering the "unique attributes of youth" in imposing Campbell's sentence. Campbell argues that the district court "specifically and intentionally" disregarded his youth in contravention of United States Supreme Court case law involving juvenile offenders. Campbell cites *Roper v. Simmons*, 543 U.S. 551 (2005), *Miller v. Alabama*, 567 U.S. 460 (2012), and *Graham v. Florida*, 560 U.S. 48 (2010), to support his argument. Specifically, Campbell contends that the district court failed to consider the differences between juvenile and adult offenders when it focused on the nature of the offenses committed by Campbell. Campbell further asserts that the district court placed "undue emphasis on the punishment aspect of sentencing in violation of the teachings of *Roper*, *Graham,* and *Miller*."

In response, the State first argues that none of the categorically prohibited juvenile sentences in the cited cases are implicated in this case. The State attacks Campbell's reliance on cases from other jurisdictions to support his contention that *Miller* should apply to all juvenile

sentencing proceedings, noting that the Idaho Supreme Court has already rejected this argument in *State v. Shanahan*, 165 Idaho at 350, 445 P.3d at 159. Instead, the State points out that most states that have considered this issue have concluded that *Miller's* rationale only applies to a sentence of life without parole for a juvenile. *See, e.g.*, *State v. Link*, 482 P.3d 28, 43–47 (Or. 2021). The State asserts that Campbell has failed to show that *Miller*'s Eighth Amendment standard applies because Campbell's sentence was not life without parole.

Even if *Miller* applied here, the State contends that Campbell's argument fails because a sentencing judge has the discretion to determine how much weight to give mitigating factors such as youth. The State concludes that the district court considered youth as a mitigating factor that was "outweighed in full or in part by aggravating factors such as the heinousness and repeated nature of Campbell's crimes."

In reply, Campbell discusses the recent Supreme Court case *Jones v. Mississippi*, 141 S. Ct. 1307 (2021), and asserts that it reaffirmed the principle that youth must be considered as a mitigating factor during sentencing. Campbell next argues that *State v. Shanahan* is not dispositive because its statement that not "every juvenile sentenced as an adult is entitled to consideration of the *Miller* factors" was merely dicta which conflicts with United States Supreme Court case law. Campbell again asserts that the district court did not consider his youth as a mitigating factor at sentencing. Campbell assigns error to the district court's statement that it could not find that Campbell's "culpability is diminished to any great degree by the transient immaturity of youth based upon the way the offenses were committed."

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. "Where a punishment is grossly disproportionate to a crime, the Eighth Amendment is violated." *Shanahan*, 165 Idaho at 348, 445 P.3d at 157. In the context of youth, the United States Supreme Court has held that juvenile offenders must be afforded "heightened constitutional protections." *Orozco*, 168 Idaho at 278, 483 P.3d at 335. The Supreme Court has prohibited sentencing a juvenile to death, *Roper*, 543 U.S. at 578-79, or to life in prison without the possibility of parole, *Graham*, 560 U.S. at 82, *Miller*, 567 U.S. at 489, because such punishments violate the Eighth Amendment.

This Court discussed *Miller* at length in *Shanahan*, 165 Idaho at 348, 445 P.3d at 157. In *Shanahan*, a juvenile was sentenced to a 35-year fixed term for a homicide he committed during a robbery. *Id.* at 346, 445 P.3d at 155. Over twenty years later, Shanahan filed a Rule 35 motion to

correct an illegal sentence, arguing that *Miller* required him to be resentenced to reflect his "youth and its attendant circumstances." *Id.* at 347, 445 P.3d at 156. This Court concluded that *Miller's* rationale—that life without parole sentences are prohibited for juveniles unless the crime "reflects irreparable corruption"—only "extends to determinate sentences that are the *functional equivalent* of a life sentence." *Id.* at 349, 445 P.3d at 157 (italics added).

This Court next concluded that Shanahan's life sentence with 35 years fixed was not the functional equivalent of a life sentence without the possibility of parole:

> [a]lthough Shanahan will be middle-aged when he becomes eligible for release, he still has a meaningful opportunity to obtain release—and much of his life ahead of him—if he can demonstrate that he is sufficiently rehabilitated and qualifies for parole. The Court is not satisfied that such a result is unjust under the circumstances of this case.

*Id.* at 352, 445 P.3d at 161. As such, the Court held that *Miller* did not apply and that the 35-year fixed term did not violate the Eighth Amendment. *Id.*

The rationale set forth in *Shanahan* is equally applicable to Campbell. Unlike the defendant in *Shanahan*, who received an indeterminate life sentence with only a portion of it fixed, here, Campbell was not given a life sentence. Campbell was sentenced to twenty years fixed; a sentence that is clearly not the functional equivalent of a life sentence. In fact, Campbell, who was seventeen years old when he committed these offenses, will be 37 years old when he becomes eligible for parole. As this Court concluded in *Shanahan*, Campbell will have "much of his life ahead of him" when he becomes eligible for release. The fixed portion of his sentence, twenty years, is markedly less than Shanahan's 35-year fixed sentence, which this Court concluded was not the functional equivalent of a life without parole sentence. As such, *Miller* does not apply to bar Campbell's twenty-year fixed term.

Further, we do not dispute that sentencing courts must consider a juvenile's youth. *See Jones*, 141 S.Ct. at 1314. Here, contrary to Campbell's assertion, the district court fully considered Campbell's youth as well as the applicable Supreme Court case law regarding juvenile sentencing:

> I thought about the question of a blended sentence as I could impose under [Idaho Code section] 19-2601A. I've considered your, as the case law describes it, transient immaturity of youth. I'm familiar with juvenile sentencing jurisprudence as set forth in *Roper versus Simmons*, *Graham versus Florida*, and *Miller versus Alabama*. *Roper* was a capital case. It has no real application here. *Graham* was a life without parole case as was *Miller*. None of them have any direct application here, but the reasoning set forth in those cases and in *Windom versus State*, [162

22

Idaho 417, 398 P.3d 150 (2017),] in this case is useful in trying to arrive at an appropriate sentence.

A blended sentence

> refers to the expanded sentencing discretion a district court has in a case, such as this one, where a juvenile is charged as an adult. Idaho Code section 20-509(4) permits the court, "if a finding is made that adult sentencing measures would be inappropriate," to either:
>
> > (a) Sentence the convicted person in accordance with the juvenile sentencing options set forth in this chapter; or
> >
> > (b) Sentence the convicted person to the county jail or to the custody of the state board of correction but suspend the sentence pursuant to section 19-2601A, Idaho Code, and commit the defendant to the dual custody of the department of juvenile corrections and the state board of correction.

*Orozco*, 168 Idaho at 281 n.10, 483 P.3d at 338 n.10 (quoting I.C. § 20-509(4)); *see also* I.C. § 19-2601A. Blended sentences are only permitted in cases involving juveniles. The district court expressly considered whether to impose a blended sentence, which means it considered Campbell's age in reaching its decision.

The district court also concluded that Campbell was not "irreparably corrupt," while at the same time noting that it could not "find that [Campbell's] culpability [wa]s diminished to any great degree by the transient immaturity of youth based upon the way these offenses were committed." The district court repeatedly referred to the serial and violent nature of Campbell's multiple rapes, as well as his ability to express remorse while continuing to engage in heinous conduct. It was permissible for the district court to weigh Campbell's youth in tandem with the nature of Campbell's conduct. It is clear from the record before us that the district court considered Campbell's youth in tailoring the sentence that was ultimately imposed. As such, we conclude that the sentence imposed does not violate the Eighth Amendment because the district court properly considered Campbell's youth in reaching its sentencing decision.

## IV. CONCLUSION

For the reasons discussed, we affirm Campbell's sentence.

Chief Justice BEVAN, Justices BRODY, MOELLER and ZAHN CONCUR.