178 P.3d 658

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Mark Allen PERSON, Defendant–Appellant.**

**No. 32998.**

Court of Appeals of Idaho.

Oct. 31, 2007.

Review Denied March 11, 2008.

Molly J. Huskey, State Appellate Public Defender; Diane M. Walker, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cud, Deputy Attorney General, Boise, for respondent.

GUTIERREZ, Judge.

Mark Allen Person appeals from the denial of his motion to correct his Presentence Investigation Report (PSI) and Idaho Criminal Rule 35 motion for reduction of sentence. We affirm.

## I.

### FACTS AND PROCEDURE

Person and Eric Christensen were involved in the manufacture of methamphetamine under the direction of a woman identified as Carla. Carla became upset with Christensen and informed Person and others that she wanted him "gone." Joi Reno and Person took Christensen to a remote wooded area where all three injected methamphetamine. A fight broke out between Christen-

sen and Person. Christensen's body, his throat slit twice, was later found by police.

After Person was arrested and charged with the first-degree murder of Christensen, he made incriminating statements about his involvement to interrogating detectives. The district court denied his motion to suppress these statements, and he entered a conditional guilty plea on August 20, 2002, to the amended charge of second degree murder. He reserved his right to appeal the denial of his suppression motion. The district court ordered that a presentence investigation report (2003 PSI) be prepared and subsequently imposed a unified life sentence with twenty years determinate.

On direct appeal, Person successfully argued to this Court that his *Miranda*[1] rights had been violated by the interrogation, and we suppressed portions of his statements to the detectives. *State v. Person,* 140 Idaho 934, 104 P.3d 976 (Ct.App.2004). Upon remand, Person entered a binding I.C.R. 11 plea agreement with the state whereby it was stipulated that the sentence would be a unified fifty years with fifteen years determinate. The parties further agreed to "waive any presentence investigation" and requested the sentence be immediately imposed.[2] Accepting the agreement, the district court issued a judgment of conviction on September 12, 2005, reinstating the August 20, 2002, guilty plea and imposing the agreed upon sentence.

On October 31, 2005, Person filed a "Motion to Correct Clerical Mistakes by Retracting 2003 PSI Pursuant to I.C.R. 36 and I.C.R. 32" wherein he requested that the court direct the Department of Corrections (Department) to return all copies of the 2003 PSI for redaction of information derived from his suppressed statements and correction of "other inaccuracies" and that the Department be given a corrected version. Person also filed an I.C.R. 35 motion for reduction of sentence, requesting his sentence be modified to reduce the determinate portion by two years and increase the indeterminate segment by two years.

After separate hearings on the PSI and Rule 35 motions, the court issued a written order denying relief. This appeal followed.

## II.

## ANALYSIS

### A. Motion to Redact and Correct the 2003 PSI

Person argues the district court abused its discretion in denying his motion, purportedly brought under I.C.R. 32, by which he requested the suppressed statements be redacted from his 2003 PSI. Person does not direct us to the specific portions of the PSI to which he objects, but we assume, as the state does in its brief, that his contentions center on the "Official Version" of the crime included in the report. That version states:

The appended Police [sic] reports reveal the body of Eric Lee Christen [sic], was found on July 2, 2001, on Bogus Basin Road, Boise County, Idaho. It was discovered during the course of the investigation that Mark Allen Person was considered a suspect. During a[sic] interview with Detective Pat Schneider the defendant admit-

---

1. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. In its entirety the plea agreement states:

Pursuant to I.C.R. 11(d)(1)(C), the parties hereby agree to the following resolution to case. This resolution is binding on the Court, and if the Court does not accept this as the resolution of the matter, the Defendant's guilty plea will be withdrawn and the case will proceed to trial. The agreement is as follows:

The State has amended [the] Information to a charge of Murder in the Second Degree.

The Defendant's guilty plea entered before the court on August 20, 2002, shall be reinstated.

The parties stipulate the Court shall take judicial notice of said guilty plea.

The parties further stipulate said guilty plea provides a factual basis for the crime of Murder in the Second Degree. The State further has complied with the victim's right amendment, and the victims are aware of this resolution.

The parties further waive any presentence investigation and ask the Court to impose the above stated sentence on September 9, 2005.

The stipulated sentence is: Judgment of Conviction: 15 years fixed + 35 years indeterminate. The Defendant is to receive credit for 1528 days served through September 9, 2005, plus court costs.

ted holding the victim down while Joi Reno used his knife to cut the victim's throat. The defendant told Defective Pat Schneider that he did not want Eric Christensen to die, however he did not make any attempts to stop Reno from cutting Eric's throat or render aid to Eric after the fatal injury was inflicted.

In *Person*, 140 Idaho 934, 104 P.3d 976, this Court suppressed Person's statements made during the interrogation subsequent to what we decided was an unequivocal request for counsel, and thus, we agree that language in the PSI referring to Person's admission and description of the crime to Detective Schneider was information suppressed in *Person*. The district court, however, denied Person's motion to redact those statements, reasoning that Person offered no authority permitting the court to redact a pre-existing report which the Department was entitled to have in accordance with I.C.R. 32.

■ Idaho Criminal Rule 32 is entitled "Standards and procedures governing presentence investigations and reports" and discusses in general when presentence investigations are to be ordered, the required contents of a presentence report as well as information that can be included, and disclosure of such reports. It is Person's contention that while the rule does not explicitly give district courts the power to correct a PSI that has been forwarded to the Department, the court's complete and infinitely continuing authority to alter the document is implied. We disagree. Specifically, Rule 32(g)(1) prescribes that:

Full disclosure of the contents of the presentence report shall be made to the defendant, defendant's counsel, and the prosecuting attorney prior to any hearing on the sentence except as hereinafter provided. The defendant and the defendant's attorney shall be given a full opportunity to examine the presentence investigation report so that, if the defendant desires, the defendant may explain and defend adverse matters therein. The defendant shall be afforded a full opportunity to present fa-

vorable evidence in defendant's behalf during the proceeding involving the determination of sentence. . . .

Thus, the timeframe for alterations to the report is explicitly tied to the sentencing hearing; it is at the sentencing hearing—and not beyond—that the defendant is given the opportunity to object to its contents. Section (h)(1) of the rule further stipulates that "[a]fter use in the sentencing procedure, the presentence report shall be sealed by court order, and thereafter cannot be opened without a court order authorizing release of the report or parts thereof to a specific agency or individual." Thus, Rule 32 operates to grant the defendant a specific time in which to attempt to influence the contents of the report and then essentially "closes" the report once the sentencing procedure has concluded. Such a restriction is entirely logical from an efficiency perspective—to allow a defendant open-ended opportunity to argue for alteration of a PSI would result in a disincentive to utilize the time explicitly provided for by the rule (at the sentencing hearing) and inevitably create an excess of litigation not intended by the procedures outlined in Rule 32. Accordingly, we hold that a district court's authority to change the contents of a PSI ceases once a judgment of conviction and sentence are issued.[3]

Person argues that *State v. Rodriguez*, 132 Idaho 261, 971 P.2d 327 (Ct.App.1998), implicitly authorizes a district court to change a PSI even after sentencing. In a footnote, this Court discussed the preferred procedure when a court determines portions of a PSI should not be considered because they are deemed unreliable. We said that, as opposed to just verbally identifying those portions not being considered in sentencing, a better process would be to physically note on the report which excerpts are excluded. And, since the district court had found that sections of Rodriguez's PSI should not be considered because the information was unreliable, we recommended that "the district court in this case cross out on Rodriguez's PSI those portions that were disregarded by the

---

3. An additional report may be ordered at the discretion of the district court pursuant to I.C.R. 32(f) for use at sentencing and an addendum to the presentence report is authorized following retained jurisdiction pursuant to Idaho Code § 19-2601(4).

court at sentencing and forward a corrected copy to the Department of Corrections." *Id.* at 262–63 n. 1, 971 P.2d at 338–39 n. 1. Thus, despite the fact the Department had already received the PSI, we recognized the district court's prerogative to replace it with a corrected version.[4] *Rodriguez*, however, is easily distinguished from this case. There, Rodriguez objected to inclusion of unreliable information at his sentencing hearing and the court partially granted his motion to strike during that hearing. Thus, our suggestion that the PSI be corrected despite it already being in the Department's possession was merely a manner in which we assured justice was accomplished for a defendant who had utilized the correct procedure (i.e., objecting at sentencing) to correct a PSI and not a broad grant of power for district courts to alter PSIs on a infinite basis. In contrast, Person did not object to inclusion of his suppressed statement when the PSI was considered at his initial sentencing.

▇▇▇▇ At the hearing on his motion to redact, Person further argued that inclusion of the suppressed statements violated his Fifth Amendment right against self-incrimination.[5] A defendant's Fifth Amendment privilege against self-incrimination applies both at the sentencing hearing and in presentence evaluations. *Estrada v. State*, 143 Idaho 558, 563, 149 P.3d 833, 838 (2006); *State v. Wilkins*, 125 Idaho 215, 217–19, 868 P.2d 1231, 1233–35 (1994); *State v. Lankford*, 116 Idaho 860, 871, 781 P.2d 197, 208 (1989). However, if a defendant desires the protection of the Fifth Amendment, he generally must claim it or such shelter will be lost. That is, if one who is being questioned does not assert the privilege and instead voluntarily responds without protest, the responses are not considered to have been compelled within the meaning of the Fifth Amendment. *Minnesota v. Murphy*, 465 U.S., 420, 427–28, 104 S.Ct. 1136, 1141, 79 L.Ed.2d 409, 419 (1984); *State v. Curless*, 137 Idaho, 138, 143, 44 P.3d, 1193, 1198 (Ct.App.2002) (holding that the defendant's failure to assert the Fifth Amendment during a psychosexual evaluation precluded him from asserting the privilege on appeal).

Here, we recognize that statements initially obtained in violation of Person's Fifth Amendment right were included in the PSI; however, Person rendered this essentially a moot point by failing to assert the privilege in regard to the PSI. Instead he voluntarily reiterated his account of the crime to the presentence investigator. The "Defendant's Version" of the incident implicated him to virtually the same extent as had his statements to Detective Schneider that this Court suppressed. He told the presentence investigator that:

> Eric [Christensen] and I had been frequenting a drug house for about a week. We had no sleep this entire time. The night before Eric's death, Eric had been kicked out of the house for some things he had said. He was told to leave and Joi Reno and I were directed to take him home. As we were leaving I asked Jeff Quiggle if he would please [go] to Eric's [house] ahead of me and clean up some drug paraphanilia [sic] that we had left lying around. He agreed to do so. Joi, Eric & I drove up Bogus Basic Road[.][W]e all discussed doing some

---

4. Such discretion is important, considering, as we discussed in *Rodriguez*, that the use of a PSI does not end with the defendant's sentencing.

 The report goes to the Department of Corrections and may be considered by the Commission of Pardons and Parole in evaluating the defendant's suitability for parole. *See* I.C.R. 32(h). In addition, if the defendant reoffends, any prior PSI is usually presented to the sentencing court with an update report from the presentence investigator. Thus, a PSI follows a defendant indefinitely, and information inappropriately included therein may prejudice the defendant even if the initial sentencing court disregarded such information.

*State v. Rodriguez*, 132 Idaho 261, 262–63 n. 1, 971 P.2d 327, 328–29 n. 1 (Ct.App.1998).

5. Person further argues we cannot affirm because "the district court failed to review the PSI [after the direct appeal] and, therefore, this Court should not review evidence not considered by the district court on the motion." This argument is disingenuous. The district court specifically addressed in its Memorandum Decision and Order Person's argument that use of the statements violated his Fifth Amendment right to remain silent and his contention that inclusion of the statements violated the plea agreement, thereby directly addressing the contents of the PSI.

drugs that I had and agreed to stop somewhere along the road. Finding a pull out area we all got out of the car and went up a small hill to sit on some rocks and do some meth. After we all shot up Joi asked me if I was going to do anything to Eric for what he had said at the party the night before. I decided to beat Eric up and commenced to doing so. I hit Eric, chocked [sic] him & wrestled him to the ground ... [w]hile holding him on the ground and beating him up. Joi came up beside us and cut Eric's throat.

Given there is no evidence that Person claimed the Fifth Amendment privilege and was nevertheless compelled to answer, nor that compulsion prevented him from asserting the privilege, we conclude that because he did not assert the privilege, he is not entitled to its protections in regard to his statements to the presentence investigator. Thus, that the suppressed statements were included in the PSI was of no consequence since Person had provided virtually the same information when he had been free to assert the privilege against self-incrimination.

 Finally, Person argues that any use of the PSI was in contravention of the Rule 11 plea agreement he entered. He contends the provision stating that the "parties further waive any presentence investigation" meant they agreed that no PSI would be considered in the second sentencing, and that by leaving an unredacted 2003 PSI in Person's Department file, the plea agreement was breached.

 Plea agreements are contractual in nature and generally are examined by courts according to contract law standards. *State v. Jafek*, 141 Idaho 71, 73, 106 P.3d 397, 399 (2005); *State v. Shafer*, 144 Idaho 370, 374, 161 P.3d 689, 693 (Ct.App.2007). In interpreting the provisions of a contract, a court

must first determine whether those terms are ambiguous or unambiguous, because the application of an unambiguous term is a question of law to be decided by the appellate court while the interpretation of ambiguous language presents a question of fact as to the parties' intent. *Shafer*, 144 Idaho at 374, 161 P.3d at 693; *State v. Doe*, 138 Idaho 409, 410–11, 64 P.3d 335, 336–37 (Ct.App.2003). We conclude the agreement to "waive any presentence investigation" in this case is not ambiguous. Importantly, the plea agreement does not refer to the 2003 PSI report and the most logical implication is that it has nothing to do with it. One does not "waive" an investigation that has occurred three years earlier. Common sense dictates that the language citing to a "waiver" refers to an agreement that the existing PSI need not be updated for the September 2005 sentencing. We see no reason to adopt the broad interpretation advanced by Person—that the agreement to "waive" a PSI not only meant a waiver of an updated PSI, but the complete elimination of the prior PSI from his record. There is simply no reasonable basis for such an interpretation where unambiguous language of the agreement does not indicate as much.

In sum, not only did the district court not have discretion to correct the Department's copy of the 2003 PSI, there were no legitimate grounds upon which to alter it in the first place. Person did not assert his Fifth Amendment privilege during the presentence investigation, and instead voluntarily injected statements regarding his involvement with the murder into the PSI. In addition, inclusion of the statements and the 2003 PSI remaining in Person's Department file does not violate the Rule 11 plea agreement whose plain language did not address the 2003 PSI.[6]

---

6. In his argument to the court below, Person also relied on Idaho Criminal Rule 36, concerning the correction of clerical mistakes, to object to inclusion of his suppressed statements in the PSI. We agree with the district court that Rule 36 is not applicable to the issue. The inclusion of suppressed statements in a PSI is not the nature of "clerical error" as it has been interpreted. *See State v. Bacon*, 117 Idaho 679, 683, 791 P.2d 429, 433 (1990) (applying Rule 36 where the wrong case numbers were mistakenly put on the order appointing a special prosecutor and an

amended complaint); *State v. Bell*, 115 Idaho 81, 764 P.2d 448 (Ct.App.1988) (holding that where the verdict selected by the jury reflected a finding of guilt, all jurors were polled and agreed with the final verdict, and the jury foreman's affidavit confirmed the defendant's guilt, the court's insertion of the word "guilty" in the jury verdict was merely a correction of a clerical mistake). In contrast, the change Person requested here was a substantive correction involving the deletion of information from the PSI—an issue that had not previously been brought to the attention of the

## B. Rule 35 Motion

█ Person also filed a motion for reduction of sentence pursuant to I.C.R. 35, arguing the sentence imposed was too harsh. Specifically, he requested the determinate portion of his sentence be reduced by two years and the indeterminate portion be increased by two years. In support of the motion, Person submitted documents illustrating the self-improvement programs he had been involved in since being incarcerated, as well as his achievements in regard to those activities.

█ The stipulated sentence portion of the plea agreement Person entered creates a substantial obstacle to his argument for Rule 35 relief. As we mentioned earlier, a plea agreement is contractual in nature and must be measured by contract law standards. *Jafek*, 141 Idaho at 73, 106 P.3d at 399; *Shafer*, 144 Idaho at 374, 161 P.3d at 693. By his plea agreement, Person stipulated to, and requested from the court, the very sentence that was imposed. His acquiescence in the stipulated sentence was part of the consideration that he gave in exchange for the state's agreement to amend the charge to second degree murder and recommend a sentence of fifty years with fifteen years determinate. Person now seeks to retain at least one benefit of the plea bargain while escaping a part of the burden. Such an effort should not ordinarily be countenanced by a court. *State v. Holdaway*, 130 Idaho 482, 484, 943 P.2d 72, 74 (Ct.App.1997). It is not only the prosecutor who is bound by a plea agreement-a defendant is also obligated to adhere to its terms, and the state is entitled to receive the benefit of its bargain. *See e.g., State v. Armstrong*, 127 Idaho 666, 668, 904 P.2d 578, 580 (Ct.App.1995). Therefore, in *State v. Wade*, 125 Idaho 522, 873 P.2d 167 (Ct.App. 1994), we held that a defendant who had received the precise sentence that he had requested in a written plea agreement could not be heard to argue on a Rule 35 motion that the sentence was unreasonable when imposed. *Id.* at 525, 873 P.2d at 170. We further stated that the defendant's Rule 35

motion could have merit only if it was justified by new or additional information that was not available when the plea bargain was made. *Id.* at 525–26, 873 P.2d at 170–71.

█ As we discussed in *Holdaway*, we have not held that a trial court never has authority to reduce a sentence on a Rule 35 motion after a stipulated sentence has been imposed, but we have said that such relief should be allowed only in extraordinary circumstances. We agreed in *Holdaway* with the United States District Court which stated in *United States v. Goehl* that the reduction of an agreed-upon sentence ordinarily will be justified only if "post-sentencing developments, previously unforeseen and rendering the earlier binding agreement inappropriate, were to occur." *Holdaway*, 130 Idaho at 485, 943 P.2d at 75 (citing *Goehl*, 605 F.Supp. 517, 519 (N.D.Ill.1984)). We were also persuaded by the Ninth Circuit's decision in *United States v. Semler*, holding that former Federal Rule of Criminal Procedure 35(b) permitted the court to reduce an agreed-upon sentence only "in those exceptional cases where the sentence is plainly unjust or unfair in light of the information the district court received after sentencing the defendant." 883 F.2d 832, 835 (9th Cir. 1989) (*cited in Holdaway*, 130 Idaho at 485, 943 P.2d at 75). Accordingly, a defendant requesting reduction of a stipulated sentence must show that his motion is based upon unforeseen events that occurred after entry of his guilty plea or new information that was not available and could not, by reasonable diligence, have been obtained by the defendant before he pled guilty pursuant to the agreement. *Holdaway*, 130 Idaho at 485, 943 P.2d at 75. The defendant must also show that these unanticipated developments are of such consequence as to render the agreed sentence plainly unjust. *Id.*

This standard has not been met by Person. He has shown no injustice in his sentence and no compelling reason why he should be relieved of the terms of a plea bargain which he voluntarily made and to which the state has diligently adhered. That he has been a

district court—as opposed to a clerical correction to conform a document to a decision already made by the court. Accordingly, the district

court was correct in denying Person's motion under Rule 36 to remove the suppressed statements from his PSI.

"model" prisoner is not conclusive, because while we have held that although good conduct while in prison is worthy of consideration, it may not necessarily result in a reduction of a prisoner's sentence. *Hassett v. State,* 127 Idaho 313, 317, 900 P.2d 221, 225 (Ct.App.1995); *State v. Sanchez,* 117 Idaho 51, 52, 785 P.2d 176, 177 (Ct.App.1990). At sentencing, the court expressed concern that the elements of deterrence and punishment be addressed by the sentence, regardless of whether Person took advantage of opportunities to rehabilitate himself while incarcerated, as the court always believed he would. In other words, such "good behavior" by Person was not unanticipated at the time he agreed to the plea bargain nor does it render his current sentence unjust. Applying this standard, we cannot say the district court abused its discretion in denying Person's Rule 35 motion for reduction of sentence.

## III.

## CONCLUSION

The district court did not err in denying Person's motion to redact the suppressed statements from the 2003 PSI because it did not have the authority to correct the document after the final judgment was issued, Person did not invoke his Fifth Amendment privilege against self-incrimination in regard to the presentence investigation, and inclusion of the statements does not violate his Rule 11 plea agreement with the state. Finally, the district court did not abuse its discretion in denying Person's Rule 35 motion requesting a reduction in the determinate portion of his sentence in light of the fact he stipulated to the sentence in his plea agreement with the state and has not shown there is new evidence suggesting that the agreement should be altered. The denial of Person's Rule 35 motion for reduction of sentence and the denial of his motion to correct the PSI are affirmed.

Chief Judge PERRY concurs.

Judge LANSING, specially concurring.

I write separately to disavow any implication, which might otherwise be drawn from the Court's opinion, that evidence which has been suppressed from use at trial must be excluded in sentencing proceedings if a timely objection is made. That is an issue that we have not decided in this case.

Several jurisdictions addressing the question have held that the purpose of the exclusionary rule—to deter police misconduct—is sufficiently served by excluding the unlawfully acquired evidence at trial and does not justify its exclusion in sentencing proceedings if the evidence was not coerced and is otherwise reliable. For example, in *United States v. Nichols,* 438 F.3d 437 (4th Cir. 2006), the court determined that the Fifth Amendment does not prohibit consideration at sentencing of statements obtained from the defendant in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The court said:

> [A] balancing of the deterrent effect expected to be achieved by extending the *Miranda* exclusionary rule against the harm resulting from the exclusion of reliable evidence from the truth-finding process.... [W]e conclude that the policies underlying the *Miranda* exclusionary rule normally will not justify the exclusion of illegally obtained but reliable evidence from a sentencing proceeding. We believe that in most cases, the exclusion of evidence obtained in violation of *Miranda* from the government's case-in-chief at trial will provide ample deterrence against police misconduct.... [T]he additional deterrent effect of excluding illegally obtained evidence from sentencing usually would be minimal.
>
> In addition, absent coercive tactics by police, there is nothing inherently unreliable about otherwise voluntary statements obtained in violation of *Miranda* ....

*Nichols,* 438 F.3d at 443 (citations omitted). *Accord, Del Vecchio v. Illinois Dep't of Corr.,* 31 F.3d 1363 (7th Cir.1994); *People v. Mancini,* 239 A.D.2d 436, 658 N.Y.S.2d 37 (N.Y.App.Div.1997). *But see State v. Valera,* 74 Haw. 424, 848 P.2d 376 (1993), holding that evidence obtained after inadequate *Miranda* warnings could not be used at sentencing, based in part upon broader protections of the state constitution.

 

In the present case, we have rejected Person's challenge to the inclusion of his suppressed statements in the presentence investigation report because he made equivalent new disclosures of the same information to the presentence investigator. By relying upon this mootness point, however, I imply no view as to whether, absent waiver or mootness, previously suppressed evidence must be excluded at a sentencing hearing if objection is made. That issue remains for consideration on another day.