# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 49840

STATE OF IDAHO,           )
                                           )

    **Plaintiff-Respondent,**    )    **Boise, November 2022 Term**
                                           )

v.                            )    **Opinion Filed: February 1, 2023**
                                         )

PAUL AARON GREER,      )    **Melanie Gagnepain, Clerk**
                                         )

    **Defendant-Appellant.**     )

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Lansing L. Haynes, District Judge.

The <u>judgment</u> of the district court is <u>affirmed in part,</u> <u>vacated in part,</u> and <u>remanded</u> for further proceedings.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for appellant, Paul Aaron Greer. Jenny C. Swinford argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for respondent, State of Idaho. Justin Porter argued.

_____

STEGNER, Justice.

This appeal concerns a criminal defendant's challenges to requested corrections to a presentence investigation report ("PSI") and to the sentence imposed. In 2021, Paul Greer pleaded guilty to felony domestic battery and was sentenced to a prison term of not less than two and not more than seven years. He appeals, raising two issues: Whether the district court abused its discretion when it (1) failed to redline[1] two requested corrections to the PSI; and (2) imposed an unreasonable sentence.

The Idaho Court of Appeals rejected Greer's argument regarding the PSI, holding that the record was insufficient to support the appeal because it included only "the PSI that was created prior to sentencing," not the actual and potentially erroneous report distributed to the Idaho

---

[1] "Redlining refers to a process by which a trial court physically notes the excluded portions of a PSI on the document. This process includes the physical notation of both additions and corrections on a PSI." *State v. Hanchey*, 169 Idaho 635, 640 n.1, 500 P.3d 1159, 1164 n.1 (Ct. App. 2021) (internal citations and quotation marks omitted).

1

Department of Correction. *State v. Greer*, No. 48783, 2022 WL 1121749, at \*2 (Idaho Ct. App. Apr. 15, 2022) (unpublished). The Court of Appeals also concluded that the sentence imposed was not unreasonable. *Id.* Greer timely petitioned this Court for review, which was granted. We now vacate in part and affirm in part the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In September 2020, a Post Falls police officer responded to an incident after receiving a call about a fight in a local RV park between a man, later identified as Paul Greer, and a woman. A witness told police that she had seen Greer "holding onto both of [the woman's] arms with his hands, squeezing them[;] . . . hitting [the woman] multiple times . . . with a closed fist[;] . . . and while still behind [the woman], plac[ing] her into a choke hold[.]"

When the responding officer arrived, Greer was sitting on the woman, with her face down on the ground and his hands on her back. Greer was arrested, and the victim refused medical treatment. The police later observed "many more bruises" and cuts on her arms and legs, cigarette burns on her back, a large burn on the inside of her knee, a "goose-egg" bruise over her eye, and swelling on one of her feet.

When officers began questioning the woman about whether any physical altercations had occurred, she repeatedly said "I don't know." The woman said that she did not know how she had gotten to the grass, or whether she had any problems breathing, or whether she had lost consciousness. After speaking with the police, the woman started crying and "said she wasn't trying to get anybody in trouble." She also said that Greer suffered from "a traumatic brain injury . . . [and] is not all there at times."

The Kootenai County Prosecutor initially charged Greer with attempted strangulation and domestic battery. At a preliminary hearing before the magistrate court, the prosecutor moved to add a count of witness intimidation after Greer made repeated phone calls to the woman from jail "instructing her to get him out of this." The magistrate court ordered the complaint amended, and Greer waived an additional preliminary hearing. The magistrate court found probable cause existed for the charges and ordered the case to be assigned to the district court. The prosecutor filed a Criminal Information charging Greer with attempted strangulation, felony domestic battery, and witness intimidation. The prosecutor also moved to amend the Information to allege a sentencing enhancement which would subject Greer to a lengthier prison sentence as a habitual offender

2

pursuant to Idaho Code section 19-2514. While the record on this issue is unclear, it appears the prosecutor's motion was granted.

Greer agreed to plead guilty to domestic battery, in exchange for a dismissal of Counts I and III (attempted strangulation and witness intimidation respectively), as well as a dismissal of the sentencing enhancement.

Both issues on appeal arise from the sentencing hearing. The parties did not receive the presentence investigation report ("PSI" or "report") until the morning of the sentencing hearing, but both agreed on the record that the hearing could still proceed. Regarding corrections to the PSI, defense counsel first "ask[ed] the [c]ourt to note that what's referenced in [a] section [of the PSI], at least as to the three bullet points . . . the top three bullet points . . . is certainly contrary to the statements made by Mr. Greer [in the Defendant's version.]" The district court "consider[ed] that to be *not a correction to the PSI*, [but rather] a disagreement with those bullet points and the assertion that it's inconsistent with other portion [sic] of the PSI." (Italics added.) However, the district court agreed to a correction during the following exchange:

[THE COURT]: Go ahead.

[Defense Counsel]: On page 11.

THE COURT: I'm there.

[Defense Counsel]: Just that last entry, [t]his case. It should reflect a dismissal of [count] one, the attempted strangulation, and a dismissal of [count] three, the, I guess, witness intimidation pursuant to the agreement that was reached in this case.

THE COURT: *Yes, those should be indicated as dismissals.* Thank you.

[Defense Counsel]: Those are the extent of the corrections we have to the PSI.

THE COURT: Okay. I hesitate to ask the State if you have any updates or corrections when you haven't had a good chance to read it.

[Prosecutor]: Haven't seen it. Wouldn't know.

THE COURT: All right. Fair enough.

(Italics added.) The PSI, as currently written, states that Greer pleaded not guilty to Counts I and III but does not indicate the charges were to be dismissed as agreed to by the parties.

During the same hearing, the prosecutor recommended that Greer receive a seven-year sentence, with two years fixed and five years indeterminate. The prosecutor argued that this was an appropriate sentence due to Greer's prior record (of mostly substance-abuse related activity) and "the level of violence exhibited in this particular instance." In response, defense counsel quoted Greer's version of events from his PSI in which he expressed remorse for his actions.

3

Defense counsel also argued that Greer's criminal activity "t[ook] an upswing" after his traumatic brain injury ("TBI") in 2014, and, apart from this incident, he did not have much by way of a violent history. Though cognizant of Greer's injury, the district court ultimately agreed with the prosecutor's recommendation for a seven-year sentence, with two years fixed and an additional five years indeterminate. Greer timely appealed the two issues presented here. The case was assigned to the Court of Appeals.

The Court of Appeals affirmed the district court on both challenges. First, the court wrote:

> For purposes of appeal, it is insufficient to point to the PSI that was created prior to sentencing as evidence that the defendant's inaccurate, unfounded, or unreliable information was not stricken from the PSI. Instead, *the defendant must include the PSI that was distributed to the Department of Correction*, along with any judicial order regarding those corrections, to provide an adequate record in support of his or her claim. Because a copy of the PSI actually distributed to the Department of Correction is absent from the record on appeal, Greer has failed to provide an adequate record to review his redlining arguments.

*Greer*, 2022 WL 1121749, at *2 (italics added). Second, the court emphasized that "[s]entencing is a matter for the trial court's discretion," and given that "reasonable minds could reach the same conclusion as the district court," it would not reduce Greer's sentence. *Id.* (internal citation omitted). Greer timely petitioned this Court for review, which we granted.

## II. STANDARD OF REVIEW

"When reviewing a case on petition for review from the Court of Appeals this Court gives due consideration to the decision reached by the Court of Appeals, but directly reviews the decision of the trial court." *State v. Jeske*, 164 Idaho 862, 867, 436 P.3d 683, 688 (2019) (quoting *State v. Schmierer*, 159 Idaho 768, 770, 367 P.3d 163, 165 (2016)).

"A district court's denial of a motion to strike or delete portions of a PSI is reviewed on appeal for an abuse of discretion." *State v. Molen*, 148 Idaho 950, 961, 231 P.3d 1047, 1058 (Ct. App. 2010) (internal citations omitted); *see also State v. Ogden*, Nos. 48301 & 48302, 2022 WL 16626074, at *14 (Idaho 2022).

"Sentencing decisions are [also] reviewed using an abuse of discretion standard." *State v. Campbell*, 170 Idaho 232, 239, 509 P.3d 1161, 1168 (2022) (quoting *State v. Jones*, 167 Idaho 353, 358, 470 P.3d 1162, 1167 (2020)).

> In determining whether a trial court has abused its discretion, this Court asks whether the trial court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the

4

legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason."

*State v. Garcia*, 166 Idaho 661, 669, 462 P.3d 1125, 1133 (2020) (quoting *State v. Bodenbach*, 165 Idaho 577, 591, 448 P.3d 1005, 1019 (2019)).

## III. ANALYSIS

### A. The district court abused its discretion when it failed to update the portions of the PSI to reflect the dismissal of the charges of attempted strangulation and witness intimidation.

Before the Court of Appeals, Greer argued that the district court abused its discretion when it failed to update portions of the PSI that were acknowledged to be inaccurate. Greer further argued that because the district court failed to redline the PSI after it had agreed to change the inaccurate information, the case should be remanded to the district court for correction so that the corrected PSI may then be disseminated to the Idaho Department of Correction ("IDOC"). It is also possible that the corrected PSI could later be provided to the Idaho Commission of Pardons and Parole.

The State argued that Greer could not show an abuse of discretion because he only offered updates, rather than corrections, to the PSI. The State posited that because Greer pleaded not guilty to the two dismissed charges at his arraignment hearing, his changes to the PSI could be classified only as additions and not corrections. Therefore, the State argued, the defense did not "trigger[] the district court's obligation to redline the PSI[.]" In response, Greer argued that the State misinterpreted the issue—that it is not about whether the information was "inaccurate or unreliable" and, therefore, required a redline, but is instead about whether a failure to redline after acknowledging the need to do so is reversible error.

The Court of Appeals determined that Greer had not provided a sufficient record to determine whether the district court erred because the PSI that was supposed to have been distributed to the IDOC had not been included. As a result, the Court of Appeals affirmed the district court's decision. Greer's petition for review to this Court followed. Nearly all of Greer's petition for review concerns the Court of Appeals' "new, yet impossible, standard for an adequate record on failure to redline issues." This standard requires the defendant to "include the PSI that was distributed to the Department of Correction, along with any judicial order regarding those corrections" in the appellate record. *Greer*, 2022 WL 1121749, at *2. Greer argues that this standard is unworkable and impossible to comply with because it "requires the defendant to

5

produce a document that does not exist," and, even if the document did exist, "the district court lacks the authority to order the IDOC to return its copy of the PSI." He argues that this Court's intervention is necessary to clarify the requirements for appealing a redlining issue, which have become progressively muddled in recent years. Greer argues that the lack of clarity in what constitutes an adequate record for purposes of appealing a redlining issue first arose in 2020 with *State v. Golden*, 167 Idaho 509, 473 P.3d 377 (Ct. App. 2020).

In *Golden*, the defendant appealed the district court's failure to redline portions of the PSI, despite the district court appearing to agree with Golden's proffered changes to the PSI. 167 Idaho at 511–12, 473 P.3d at 379–80 ("As Golden's counsel identified each proposed addition or correction, the district court responded 'all right' to each and appeared to be (based on the sentencing hearing transcript) looking at a copy of the PSI."). The defense argued that, although Golden had "proffered additions and corrections" to the PSI, whatever changes the district court may (or may not) have made at sentencing were not included in the PSI in the appellate record and should, therefore, be remanded to the district court for correction. *Id.* at 512, 473 P.3d at 380. The State argued in response that the district court has no obligation to redline the PSI unless the defendant expressly moves the court to do so, which Golden had not done. *Id.*

The Court of Appeals rejected the State's argument and explained the dual obligations of the district court—first, to "reject consideration of inaccurate, unfounded, or unreliable information in the PSI" and second, to "redline from the PSI information it is excluding as incorrect or unreliable." *Id.* at 511, 473 P.3d at 379 (citing *Molen*, 148 Idaho at 961, 231 P.3d at 1058). However, the Court of Appeals limited this obligation, explaining that the district court is not obligated to strike or redline "information in the PSI simply because the defendant disputes the information." *Id.*

Because the Court of Appeals in *Golden* was unable to determine from the PSI in the appellate record whether the district court had followed its obligations to redline changes to the PSI, it held that Golden had demonstrated an abuse of discretion. It then remanded the case to the district court "to ensure that the court's additions or corrections are reflected on Golden's PSI and that the corrected PSI is the one distributed per I.C.R. 32(h)."[2] *Id.* at 513, 473 P.3d at 381. Importantly, the court also noted the challenges regarding appeals of redlining issues:

---

[2] Idaho Criminal Rule 32(h)(1) reads in part: "The presentence report must, however, be available to the Idaho Department of Corrections [sic] so long as the defendant is committed to or supervised by the Department[.]"

6

> We acknowledge now that PSIs are filed electronically before sentencing, the district courts may need to adopt a new procedure to ensure the PSI submitted as a documentary exhibit in the appellate record, as Idaho Appellate Rule 31(b) requires, is the version of the PSI containing the court's changes, additions, or redlining made at the time of sentencing rather than the PSI the presentence investigator originally submitted to the court. *Unless and until the Idaho Supreme Court implements a rule governing such a procedure, we leave it to the district courts to determine the best way to ensure the corrected PSI is in the appellate record.*

*Id.* at 512, 473 P.3d at 380 (italics added).

This Court has interpreted Idaho Criminal Rule 32(e)to require district courts to ensure that the PSI is accurate because it will be distributed to the IDOC and relied upon by the IDOC to make a myriad of decisions regarding the defendant during his stay in custody and while on parole. *See, e.g.*, I.C.R. 32 (e) ("While not all information in a presentence report need be in the form of sworn testimony and be admissible in trial, conjecture and speculation should not be included in the presentence report."). In *State v. Lancaster*, a defendant challenged the district court's decision not to strike "conflicting and incomplete information" on a PSI from Utah and to rely instead on a more recent PSI prepared in connection with a federal case. _____ Idaho _____, _____, 519 P.3d 1176, 1184 (2022). Both the Utah and the federal PSIs had been included as attachments to the Idaho PSI prepared prior to Lancaster's sentencing. *Id.* at _____, 519 P.3d at 1180. This Court reiterated that the district court has an obligation to "reject inaccurate, unfounded, or unreliable information contained in a PSI" and to redline that information. *Id.* at _____, 519 P.3d at 1185 (quoting *State v. Hanchey*, 169 Idaho 635, 640, 500 P.3d 1159, 1164 (Ct. App. 2021)) (internal quotation marks omitted). However, we confirmed that this obligation does not extend to correcting all disputed information – only that which has been determined to be "inaccurate, unfounded, or unreliable[.]" *Id.* (citing *Golden*, 167 Idaho at 511, 473 P.3d at 379). This Court and the Court of Appeals have repeatedly held that this obligation to redline is necessary in large part to ensure future decisions about the defendant are based on accurate information. *Id.* (citing *Molen*, 148 Idaho at 961–62, 231 P.3d at 1058–59; *Hanchey*, 169 Idaho at 640, 500 P.3d at 1164; and *State v. Rodriguez*, 132 Idaho 261, 262 n.1, 971 P.2d 327, 328 n.1 (Ct. App. 1998)). Therefore, we emphasize that there is no reason to conclude that a district court does *not* have an obligation to redline an inaccurate PSI. *See* I.C.R. 32(e). The limited question we address is instead whether a defendant may trigger the district court's obligation to redline the PSI and what must be included in the record to challenge that obligation.

7

As Greer points out, in the months following *Golden*, the Court of Appeals appeared to follow the remedy of remanding a case when the defendant showed that the district court failed to redline portions of the PSI that should have been redlined. However, that practice no longer seems to be the Court of Appeals' preferred remedy, as demonstrated by Greer's case and *State v. Granger*, 170 Idaho 136, 508 P.3d 335 (Ct. App. 2022).

In *Granger*, the Court of Appeals seemed to imply that the defendant now held the burden to show that the IDOC had received the erroneous PSI. 170 Idaho at 143 n. 4, 508 P.3d at 342 n. 4 ("Instead, the defendant must include the PSI that was distributed to the Department of Correction, along with any judicial order regarding those corrections, to provide an adequate record in support of his or her claim."). This contrasts with *Golden*, in which the Court of Appeals presumed error when it was unclear from the record whether the district court had properly redlined the PSI. 167 Idaho at 513, 473 P.3d at 381. The Court of Appeals in *Granger* ultimately did not find reversible error because the defendant "failed to obtain a ruling from the district court that the challenged information is inaccurate or unreliable," and without that ruling, the Court of Appeals was unable to determine whether the district court had erred by failing to redline the PSI. 170 Idaho at 144, 508 P.3d at 343.

Here, the State argues that the Court of Appeals' decision in *State v. Hanchey* puts the issue to rest. 169 Idaho 635, 500 P.3d 1159. In *Hanchey*, the defendant appealed the district court's failure to include Hanchey's corrections to the PSI. 169 Idaho at 640, 500 P.3d at 1164. Before the district court, Hanchey had offered additions and clarifications to her PSI, none of which were noted on the final version, despite appearing to have been accepted by the district court. *Id.* at 640, 500 P.3d at 1164. On appeal, Hanchey argued that accepting these corrections triggered the district court's obligation to redline. *Id.* at 640–41, 500 P.3d at 1164–65. The Court of Appeals held that the district court's obligations were not so broad; its responsibility to redline only arose when the defendant "disput[ed] facially unreliable information or [] present[ed] sufficient information for the district court to independently determine the reliability of the challenged information." *Id.* at 641, 500 P.3d at 1165. In offering changes to the PSI, Hanchey did not dispute any unreliable information and none of the additions made at the lower court "indicat[ed] that the presentence investigator's comments were inaccurate or unreliable such that the district court had a duty to redline that portion of the PSI." *Id.* at 642, 500 P.3d at 1166. Therefore, even if the district court had accepted Hanchey's changes, the new information would not have clarified any of the

unreliable information in the PSI, so the district court had no obligation to redline. *Id.* As a result of its analysis, the Court of Appeals affirmed the district court's decision. *Id.*

Unlike *Hanchey*, however, Greer's proffered corrections clarified incomplete information in the PSI about the status of his initial charges. Moreover, the district court acknowledged the inaccuracy in the PSI. For this reason, Greer's PSI is incomplete in a way that leaves the reader with a material misimpression about the status of his remaining charges. In addition, there is no indication in the record that the district court made the changes Greer suggested and which were seemingly accepted by the district court. Under these circumstances, it is impossible for a defendant to provide an updated PSI when one does not exist. Consequently, under these unique facts, the defendant has done enough to preserve the issue for appeal.

This holding impacts the Court of Appeals' jurisprudence regarding the limited timeline to challenge the PSI. For example, in *State v. Person*, 145 Idaho 293, 296, 178 P.3d 658, 661 (Ct. App. 2007), the Court of Appeals interpreted Idaho Criminal Rule 32 to require a defendant to object to contents of the PSI "at the sentencing hearing—and not beyond[.]" To hold otherwise, the court explained, would "allow a defendant open-ended opportunity to argue for alteration of a PSI" that would not serve the expediency goals of Rule 32. *Id.* We affirm the Court of Appeals' decisions that obligate a defendant to object to the contents of the PSI at the time of sentencing. We also agree that a defendant should not be given an "open-ended opportunity to argue for alteration of a PSI." *Id.* at 296, 178 P.3d at 661. However, we clarify the Court of Appeals' holding that "a district court's authority to change the contents of a PSI ceases once a judgment of conviction and sentence are issued." *Id.* While we acknowledge the accuracy of the Court of Appeals' holding, we begin by noting that "sentencing" and issuance of a written "judgment of conviction" are two different and discrete events that occur during a criminal prosecution. A district court's "sentencing" involves an in-court oral articulation of the court's sentence. *See, e.g.*, *Campbell*, 170 Idaho at 241, 509 P.3d at 1170. The "judgment of conviction" is a written document that serves as the written embodiment of the court's judgment (and also serves as the date upon which time begins for the filing of an appeal). *State v. Ciccone*, 150 Idaho 305, 306, 246 P.3d 958, 959 (2010) ("Under Idaho Appellate Rule 14(a), entry of a judgment opens a 42-day window within which a party's notice of an appeal as of right must be filed[.]"); I.C.R. 33(b); I.A.R. 14(a). If, as the Court of Appeals suggests, a district court loses *all authority* after "sentencing," the district court would be deprived of jurisdiction to implement the agreement of the parties (in this

9

case, to dismiss Counts I and III of the Criminal Information) or to correct the PSI. For these reasons, we conclude that prior to the issuance of the written judgment of conviction, the district court continues to have jurisdiction to take further action, which includes dismissing charges or correcting a PSI.

In sum, we conclude that the district court abused its discretion when it apparently failed to redline Greer's corrections to the PSI that it had previously agreed were inaccurate. As stated in *Golden*, the obligations of the district court are two-fold: First, it "must reject consideration of inaccurate, unfounded, or unreliable information in the PSI," and second, it must redline that information. 167 Idaho at 511, 473 P.3d at 379. In *Hanchey*, this was the standard as well, but the district court chose not to redline the PSI because the defendant did not dispute any potential inaccuracies, and the proffered information did not remedy unreliable portions of the report. 169 Idaho at 642, 500 P.3d at 1166. In contrast, here Greer noted, and the district court agreed, that a portion of the PSI was inaccurate and unreliable because it incorrectly stated that Greer had "[p]led not guilty" to the charges of attempted strangulation and witness intimidation but failed to accurately reflect that the charges against him had been dismissed.

The State's argument that Greer did not demonstrate that this information was inaccurate because he had pleaded not guilty at the arraignment is unconvincing. An arraignment is a very early step in the criminal prosecution of an individual, and the status of initial charges and filings necessarily change as the plea negotiation or trial process advances. Under the State's argument, the PSI is accurate so long as it was correct at the time it was written. This ignores the reality that a PSI may need to be updated to reflect the actual circumstances at the time of or following sentencing. As anyone familiar with criminal proceedings knows, the process is dynamic, and the district court recognized this dynamism. What is true one day about the status of the case or the defendant's background may not be accurate the next. The dismissal of charges is not substantively the same as pleading not guilty to those same charges. A dismissal, as was agreed to under these circumstances, means the charges may not be refiled by the prosecutor so long as the defendant fulfills all of his or her requirements in the plea agreement. Greer fulfilled those requirements by pleading guilty and being sentenced for domestic battery. One of the challenges identified by this appeal is the fluidity of the criminal process; however, that does not mean that the PSI should be left incomplete or only reflect an earlier status of the case. While the defendant still bears the responsibility to demonstrate that the information in the PSI is inaccurate or unreliable, once the

10

defendant establishes that the information is inaccurate, and the district court agrees, then the district court has a responsibility to ensure that it is corrected and that the corrected version is included in the record. *See Molen*, 148 Idaho at 961, 231 P.3d at 1058.

In this case, Greer cleared that hurdle. The district court agreed that this error in the PSI constituted inaccurate information and should, therefore, be corrected because it acknowledged "[y]es, those should be indicated as dismissals." However, in the record before us there is no indication the district court followed the second requirement to reflect those dismissals via a redline. Because the district court failed the second prong of this two-part requirement for redlining, it abused its discretion.

The issue remains: How to remedy this failure to redline? Greer argues that the *Golden* standard is appropriate—to order a "limited remand to redline and redistribute the PSI" when "the PSI in the appellate record [does] not contain the district court's accepted corrections and additions." When the PSI in the record does not contain the proper corrections, the appellate court is unable to determine whether the district court has properly discharged its obligations. If the defendant is required to provide a document that has never been created, the burden is impossible to comply with, leaving the defendant without the means to challenge inaccuracies within the PSI. If there is no corrected PSI in the record below, it is impossible for the defendant to supplement the record with a document that does not exist. Because there is no evidence of a corrected PSI in the record below, a limited remand is the appropriate remedy in this case. If the district court can confirm that Greer's charges were dismissed pursuant to the plea agreement and an updated PSI reflecting those facts was provided to the IDOC, the district court's obligations are at an end. If not, the PSI must be updated by the district court, made a part of the record, and provided to the IDOC.

### B. The district court did not abuse its discretion by imposing a unified term of not less than two and not more than seven years.

Greer next appeals his sentence, arguing that it is unreasonable. The district court sentenced Greer to a prison term of not less than two and not more than seven years. The district court referenced the particularly violent nature of the crime—the chokehold, the punching, the slapping, the cigarette burns, and the severe injuries to the victim—in its sentencing decision. Though the district court did acknowledge Greer's traumatic brain injury, the district court nevertheless found that Greer's actions put other persons at risk, so incarceration was necessary to protect society.

11

On appeal, Greer argues that a rider would have been more appropriate because of the presence of several mitigating factors. Greer contends that his sentence is unreasonable because a better alternative would have been for him to seek treatment for his addiction issues and problems stemming from his TBI from the Department of Veterans Affairs. The State argues that the sentence was appropriate because the crime exhibited violence to the victim. The State further argues that Greer had a high risk of reoffending and the district court properly "considered this aggravating information in light of the necessary sentencing objectives."

The statutory maximum for felony domestic battery is ten years. I.C. § 18-918(2)(b). When the lower court orders a sentence within the statutory range, the defendant bears the burden to demonstrate that the sentence was unreasonable under the circumstances. *Garcia*, 166 Idaho at 680, 462 P.3d at 1144. "When reviewing the reasonableness of a sentence, this Court conducts an independent review of the record, giving consideration to the nature of the offense, the character of the offender and the protection of the public interest." *State v. McIntosh*, 160 Idaho 1, 8, 368 P.3d 621, 628 (2015).

> In examining the reasonableness of a sentence, the Court conducts an independent review of the entire record available to the trial court at sentencing, focusing on the objectives of criminal punishment: (1) protection of society; (2) deterrence of the individual and the public; (3) possibility of rehabilitation; and (4) punishment or retribution for wrongdoing. "Reasonableness" of a sentence "implies that a term of confinement should be tailored to the purpose for which the sentence is imposed."

*State v. Adamcik*, 152 Idaho 445, 483, 272 P.3d 417, 455 (2010) (quoting *State v. Stevens*, 146 Idaho 139, 148–49, 191 P.3d 217, 226–27 (2008)) (internal quotation marks and citations omitted), *abrogated on other grounds by Garcia*, 166 Idaho 661, 462 P.3d 1125.

In *Garcia*, this Court reviewed a sentence that the defendant argued was excessive because of his mental illness and substance abuse problems. 166 Idaho at 680, 462 P.3d at 1144. Specifically, the defendant argued that the district court did not properly consider his diagnosis of Major Depressive Disorder, need for treatment of substance abuse, and remorse for his actions during sentencing. *Id.* This Court held that the district court did not abuse its sentencing discretion because it "identified the factors that should guide its discretion" and, in so doing, also discussed the purposes of punishment and how those purposes related to the defendant's history of substance abuse and mental illness. *Id.* Because the district court appropriately weighed the mitigating and aggravating factors prior to sentencing, it did not abuse its discretion in sentencing the defendant. *Id.* at 681, 462 P.3d at 1145.

Here, the district court did not abuse its discretion in sentencing Greer. First, the sentence was reasonable when considering the statutory maximum. Second, the district court was aware of the factors necessary to guide its decision and articulated its consideration of those factors on the record. Third, the district court reviewed Greer's criminal history, including previous opportunities to seek treatment for his TBI and substance abuse issues, which he argued should lead to a reduced sentence. Finally, the district court acknowledged the change in behavior, seemingly as a result of the TBI, but found that despite the injury, Greer's conduct "put[] people at risk[,]" in an apparent acknowledgement that protection of the public is the paramount concern in imposing a sentence. As in *Garcia*, the district court here based its decision on appropriate mitigating and aggravating factors and imposed a reasonable sentence after considering those factors.

Although Greer does suffer from a traumatic brain injury and substance abuse issues, this is a case of violent domestic abuse. While Greer's recognition of his TBI and his substance abuse issues can be viewed as mitigating, his inability to modify his behavior in light of those problems is aggravating. We find no error in the district court's apparent conclusion that protection of society outweighs Greer's acknowledgement of the problems from which he suffers. Therefore, the district court's imposition of a two-year fixed and five-year indeterminate sentence was reasonable under the circumstances.

## IV. CONCLUSION

In summary, we hold that the district court abused its discretion when it failed to ensure that the redline changes it agreed upon are not evident from this record. We also hold that the district court did not err in imposing the sentence that it did. For the reasons discussed, we remand the case to the district court for proceedings consistent with this decision.

Justices BRODY, MOELLER and ZAHN CONCUR.

BEVAN, Chief Justice, specially concurring.

I join in the majority's conclusion that the district court did not abuse its discretion in ordering the sentence Greer received here, but I write separately to note that I concur in the result as to the question of redlining the PSI.

I completely agree with and support these conclusions from the majority opinion:

13

1. The district court has an obligation to "reject inaccurate, unfounded, or unreliable information contained in a PSI." *Supra*, p. 7 (quoting *State v. Lancaster*, No. 48633, 2022 WL 16557360, at *7 (Idaho 2022)).

2. The district court has an obligation to redline such "inaccurate, unfounded, or unreliable information." *Id*.

3. The district court's obligation does not extend to correcting all disputed information– only what has been found to be "inaccurate, unfounded, or unreliable[.]" *Id.* (citing *Golden*, 167 Idaho at 511, 473 P.3d at 379)).

I join in the result of remanding this case to the district court to take the steps outlined by the majority and to confirm that a redlined PSI was sent to IDOC. My concern, however, is that, as the Court of Appeals recognized, we do not have a good record from which to reach this conclusion. As the majority notes, "the district court abused its discretion when it *apparently* failed to redline Greer's corrections to the PSI that it had previously agreed were inaccurate . . . ." I hesitate to fully support the notion that we should decide cases based on what "apparently" happened.

Indeed, it "is the responsibility of the appellant to provide a sufficient record to substantiate his or her claims on appeal. In the absence of an adequate record on appeal to support the appellant's claims, we will not presume error." *Groveland Water & Sewer, Dist. v. City of Blackfoot*, 169 Idaho 936, 942, 505 P.3d 722, 728 (2022) (quoting *Greenfield v. Smith*, 162 Idaho 246, 253, 395 P.3d 1279, 1286 (2017)). That said, I do not believe that Greer must include a redlined PSI in the record when one may not even exist. Thus, I agree in this limited instance that the record is sufficient to determine the district court: (1) acknowledged that the charges of attempted strangulation and witness intimidation "should be indicated as dismissals" and (2) nothing in the record confirms that happened. While normally the appellant has the burden to show error, and we shouldn't presume error, the record is sufficient here to allow this case to be remanded because it would be impossible for Greer to prove a negative. This causes me to side with the majority in reaching its decision here.

But here is the rub. As noted in the majority opinion, all PSIs are created as electronic documents now. Gone are the days when a district judge could sit at the bench during sentencing, red pen in hand and literally "redline" the PSI in real time. While a judge may redline a printed copy, it appears that in cases like this one, that did not occur. So, what are we to do to remedy this

14

issue in the future? First, I would hold that defense counsel has the ultimate obligation to ensure that the PSI sent to IDOC (however that happens with electronic documents) is accurate when sentencing is over. Defense counsel should do this by *filing* a document before sentencing that spells out what changes need to be made. The filing should also include an order that the district court can sign, noting what changes were or were not made. In the days of mandatory, electronic forms, such an order should not take major effort. I recognize that a filing asserting that changes need to be made puts more work on already overworked defense attorneys, but that is where the burden must lie for an attorney representing a client through sentencing. That burden also requires that the filing be done enough in advance to ensure that the district court and the prosecutor have time to review it. With PSIs often filed much later than seven days before sentencing, this may require case management strategies beyond the scope of my thoughts here. I am convinced, however, that if these matters are being raised "on the fly" in the courtroom, the system will continue to suffer from cases like this one where we "apparently" do not really know what happened below.

In addition, I do not see any other option than having the district court clerk print a copy of the PSI for use during sentencing that can be physically redlined, then scanned into the electronic record and forwarded to IDOC, with a copy to counsel. *See State v. Molen*, 148 Idaho 950, 961, 231 P.3d 1047, 1058 (Ct. App. 2010) ("We regard the better procedure to be a 'redlining' of the [presentence] report, in which the court physically notes which portions are excluded. This procedure not only ensures a clear record for review but also protects the defendant against misuse of the unreliable information in the future."). Thus, the responsibility to make the proper record lies, not just with the district court as the majority opinion intimates, but also with defense counsel to safeguard that appropriate corrections and physical redlining take place.

This procedure also does not solve all issues presented in cases like this one. As noted by this Court and the Court of Appeals, the PSI was created seven days before sentencing. At that time, the charges that were to be dismissed had not been, and so, as the State argues in this appeal, the PSI was not technically inaccurate or unreliable (even though I conclude it could be misleading). In such cases, the State has an obligation to timely move to dismiss counts when the plea agreement requires that it do so. When dismissal cannot occur until the sentence is pronounced, the district court must be given enough latitude to enter the appropriate orders after sentencing, whether to dismiss charges or to resolve other sentencing-specific issues. This also

provides a straightforward means for the district court to act as a backstop and guarantee that the legally required redlining takes place as I have outlined.

My suggestions, at this point, are solely that. No rule mandates that an appropriate process occur for handling changes to electronic presentence investigations. My hope is that my thoughts will prompt those on the appropriate Court committees to address this issue—to avoid future cases in which we have no real indication of what occurred in terms of these important, but discretionary decisions made by district courts.